952 F.2d 262
 Drake C. KENNEDY; Brian H. Kennedy, Co-Trustees of the
Regency Outdoor Advertising, Inc., Defined Benefit
Pension Plan Trust, Plaintiffs-Appellants,
v.
ALLIED MUTUAL INSURANCE CO., a corporation, Defendant-Appellee.
 No. 90-55258.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted May 8, 1991.
Decided Dec. 18, 1991.
 
 Joseph F. Hart, Weinstein & Hart, Beverly Hills, Cal., for plaintiffs-appellants.
 Robert J. Enders, Jr., and Ronald W. Hopkins, Gascou, Gemmill & Thornton, Los Angeles, Cal., for defendant-appellee.
 Appeal from the United States District Court for the Central District of California.
 Before BEEZER, HALL and TROTT, Circuit Judges.
 TROTT, Circuit Judge:
 
 
 1
 This case turns on whether the Regency Outdoor Advertising, Inc. Defined Benefit Pension Plan Trust (the "Plan") is an "employee pension benefit plan" within the meaning of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461 (1988) ("ERISA"). The district court in granting summary judgment concluded it was not. We conclude that the district court's basis for granting summary judgment was inadequately developed. Thus we reverse and remand for further consideration of the issues raised by cross-motions for summary judgment.
 
 
 2
 * Facts
 
 
 3
 Drake C. Kennedy and Brian H. Kennedy are the sole owners and officers of Regency Outdoor Advertising, Inc. ("Regency"). At all times relevant to this appeal, Regency had nine other employees, none of whom held any ownership interest in the corporation.
 
 
 4
 On August 1, 1978, Regency established the Plan "to provide additional incentive and retirement security for eligible employees." The Kennedys were co-trustees of the accompanying trust, and Drake Kennedy signed the Plan as "Employer" and "Plan Administrator." All Regency employees, except those associated with a union, were eligible to participate provided they met the minimum age and service requirements.
 
 
 5
 The Kennedys intended that the Plan comply with the appropriate ERISA provisions. The Plan stated:
 
 
 6
 1.02 Compliance with the Law. This Plan is being adopted, together with the Trust, to meet the requirements of ... [ERISA] which may be applicable to the Plan Years involved. All language of the Plan and Trust shall be interpreted, wherever possible, to comply with the provisions of [ERISA] and all rules and regulations thereunder....
 
 
 7
 Further, Drake Kennedy testified that "[t]he Plan was set up to comply with the requirements of ERISA."
 
 
 8
 On October 1, 1987, the Allied Mutual Insurance Company ("Allied") issued a fidelity bond (the "Bond") insuring the Plan against losses from employee dishonesty for a maximum of $250,000.[1] The Bond covers losses resulting from acts committed by an "employee" with the manifest intent to obtain a financial benefit and to cause the Plan to sustain a loss.
 
 
 9
 The Bond contained what the Kennedys refer to as an "ERISA endorsement rider," which they claim offers further evidence that the Plan complies with ERISA. Allied admits that, "as ERISA coverage was requested, a rider was provided in compliance with certain provisions of [ERISA]."
 
 
 10
 The Kennedys hired Tri-Ad Actuaries, Inc. ("Tri-Ad") to handle the daily administration of the Plan. One of Tri-Ad's responsibilities was to "monitor" the Plan to ensure that it complied with ERISA at all times. Accordingly, Tri-Ad requested an opinion letter from the Internal Revenue Service (the "IRS") to determine whether the Plan qualified under I.R.C. § 401 and whether the related trust was exempt under I.R.C. § 501(a). The IRS issued an opinion on June 1, 1982, finding both the Plan and the trust exempt. The opinion is specifically limited, however, to the Plan's status under the Internal Revenue Code.
 
 
 11
 In October 1987, Larry Rafferty, investment advisor to the Plan, engaged in two short sales of market index put options which resulted in losses of approximately $1.8 million. The Kennedys, arguing that these trades were committed in violation of their instructions to Rafferty, sought coverage for this loss under the Bond. Allied denied coverage, and the Kennedys brought this action.II
 
 Proceedings Below
 
 12
 The central question of this case in its current status is whether the Plan and the Bond are governed by ERISA.[2] If not covered by ERISA, as concluded by the district court in granting summary judgment in favor of Allied, then California law controls. Under California law, the Bond, in the view of the district court, does not provide coverage for the losses.
 
 
 13
 Title I of ERISA applies to "any employee benefit plan." 29 U.S.C. § 1003(a). An employee benefit plan is defined as "an employee welfare benefit plan or an employee pension benefit plan or a plan which is both an employee welfare benefit plan and an employee pension benefit plan." 29 U.S.C. § 1002(3). The Kennedys claim the Plan is an employee pension benefit plan, as defined in 29 U.S.C. § 1002(2)(A).
 
 
 14
 In 1975, one year after Title I of ERISA was enacted, the Secretary of Labor promulgated regulations pursuant to Congress' express delegation of rule-making authority.[3] The regulations clarify the statutory definition of "employee benefit plan" in various respects and provide, in pertinent part:
 
 
 15
 (b) Plans without employees. For purposes of Title I of [ERISA] and this chapter, the term "employee benefit plan" shall not include any plan, fund or program, other than an apprenticeship or other training program, under which no employees are participants covered under the plan, as defined in paragraph (d) of this section. For example, a so-called "Keough" or "H.R. 10" plan under which only partners or only a sole proprietor are participants covered under the plan will not be covered under Title I. However, a Keough plan under which one or more common law employees, in addition to the self-employed individuals, are participants covered under the plan, will be covered under Title I....
 
 
 16
 29 C.F.R. § 2510.3-3(b) (1990) (emphasis added). The regulations further provide that "[a]n individual and his or her spouse shall not be deemed to be employees with respect to a trade or business, whether incorporated or unincorporated, which is wholly owned by the individual and his or her spouse...." 29 C.F.R. § 2510.3-3(c)(1).
 
 
 17
 As a result, a plan whose sole beneficiaries are the company's owners cannot qualify as a plan under ERISA. See Schwartz v. Gordon, 761 F.2d 864, 867-69 (2d Cir.1985). Here, the company had nine or ten employees who were potentially eligible. In order to be a participant, an employee had to be at least twenty-five years old and have put in one year of service (defined as 1000 hours). After four years, the employee would be vested and entitled to 100% of benefits.
 
 
 18
 Drake Kennedy had originally stated in a deposition that he and his brother were the only vested participants in the Plan. Later, however, the Kennedys offered a declaration by Drake Kennedy stating that "because [he does] not handle the day-to-day administration of the plan," he had erred in his deposition testimony and that another employee, Lorraine Miller, was also a vested participant. The court rejected Kennedy's affidavit, noting that "Kennedy does not say when Ms. Miller became a participant, nor does he append any documents that support his naked contention."
 
 
 19
 The court also noted that Paul Jamison, the Plan's administrator, made no mention of Ms. Miller in his declaration. "While Drake Kennedy asserted that he discovered Ms. Miller's status after reviewing 'records that were in the possession of the Plan Administrator,' no such records were appended to Jamison's declaration."[4] Based on Kennedy's original statement that he and his brother were the only two beneficiaries under the Plan, the court concluded:
 
 
 20
 The mixed issue of law and fact as to whether the Plan was established and operated in compliance with the provisions of Title I of ERISA, 29 U.S.C. Section 1001, et seq., proves to be dispositive of this case.
 
 
 21
 ....
 
 
 22
 Upon careful consideration of the pleadings, depositions, answers to interrogatories, documents and declarations submitted by both parties, as well as the oral arguments heard on October 10, 1989, this court finds that there is no triable issue of material fact regarding the Plan's compliance with the provisions of ERISA, as the [Kennedys] have failed to present evidence sufficient to put in dispute the lack of participation in the Plan by a non-owner employee of Regency.
 
 
 23
 As such, the Court finds that as a matter of law, the Plan was not in compliance with ERISA and that the bond issued by Allied is not subject to interpretation under Title I of ERISA.
 
 
 24
 Judgment for Allied was entered on January 4, 1990.
 
 III
 Standard of Review
 
 25
 The district court's grant of summary judgment is reviewed de novo. New Hampshire Ins. Co. v. Vieira, 930 F.2d 696, 697 (9th Cir.1991). Viewing the evidence in the light most favorable to the non-moving party, this court must determine whether there are any genuine issues of material fact, and whether the district court correctly applied the relevant substantive law. Id. "Summary judgment is appropriate where no genuine issue of material fact exists and a party is entitled to prevail in the case as a matter of law." Bhan v. NME Hospitals, 929 F.2d 1404, 1409 (9th Cir.1991).
 
 
 26
 The party requesting summary judgment has the initial burden to show that there are no genuine issues of material fact. T.W. Elec. Serv. v. Pacific Elec. Contractors Assoc., 809 F.2d 626, 632 (9th Cir.1987). He does not necessarily need to put on evidence to negate his opponent's claim; he may simply point to portions of the pleadings, admissions, answers to interrogatories, and depositions which, along with any affidavits, show the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).
 
 
 27
 If the moving party satisfies his initial burden, the opposing party may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists. Fed.R.Civ.P. 56(e). In addition, the dispute must be genuine. The "opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).
 
 
 28
 Id.
 
 IV
 Analysis
 
 29
 " 'The existence of an ERISA plan is a question of fact, to be answered in light of all the surrounding facts and circumstances from the point of view of a reasonable person.' " Harper v. American Chambers Life Ins. Co., 898 F.2d 1432, 1433 (9th Cir.1990) (quoting Kanne v. Connecticut Gen. Life Ins., 867 F.2d 489, 492 (9th Cir.1988), cert. denied, 492 U.S. 906, 109 S.Ct. 3216, 106 L.Ed.2d 566 (1989)); see also Credit Managers Ass'n v. Kennesaw Life and Accident Ins. Co., 809 F.2d 617, 625 (9th Cir.1987).
 
 
 30
 As noted above, Drake Kennedy, one of the two owners/trustees of the Plan, stated that he and his brother, the other owner/trustee, were the only beneficiaries. If this were true, the Plan would not qualify under ERISA. We must determine, therefore, whether the district court erred in rejecting Kennedy's later testimony that Lorraine Miller, a non-owner employee, was also a vested participant in the Plan.
 
 
 31
 The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony. See Foster v. Arcata Associates, 772 F.2d 1453, 1462 (9th Cir.1985), cert. denied, 475 U.S. 1048, 106 S.Ct. 1267, 89 L.Ed.2d 576 (1986); Radobenko v. Automated Equipment Corp., 520 F.2d 540, 543-44 (9th Cir.1975). "[I]f a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." Foster, 772 F.2d at 1462; Radobenko, 520 F.2d at 544 (quoting Perma Research and Development Co. v. Singer Co., 410 F.2d 572, 578 (2d Cir.1969)).
 
 
 32
 Other circuits, however, have urged caution in applying this rule. In Kennett-Murray Corp. v. Bone, 622 F.2d 887 (5th Cir.1980), the Fifth Circuit stated:
 
 
 33
 The gravamen of the Perma Research- Radobenko line of cases is the reviewing court's determination that the issue raised by the contradictory affidavit constituted a sham. Certainly, every discrepancy contained in an affidavit does not justify a district court's refusal to give credence to such evidence.... In light of the jury's role in resolving questions of credibility, a district court should not reject the content of an affidavit even if it is at odds with statements made in an earlier deposition.
 
 
 34
 Id. at 894. In Camfield Tires v. Michelin Tire Corp., 719 F.2d 1361, 1365 (8th Cir.1983), the Eighth Circuit found that the Fifth Circuit's decision in Bone and the Ninth Circuit's decision in Radobenko did not conflict, but reflected different facts. In Radobenko, the district court believed that the affidavit was a sham produced merely to avoid summary judgment. In Bone, however, the affidavit was an attempt to explain certain aspects of the confused deposition testimony and therefore was not really inconsistent. Camfield, 719 F.2d at 1365.
 
 
 35
 These thoughts have been echoed by the Seventh and Tenth Circuits. In Miller v. A.H. Robins Co., 766 F.2d 1102, 1104 (7th Cir.1985), the court held that "[a]n inconsistent affidavit may preclude summary judgment ... if the affiant was confused at the deposition and the affidavit explains those aspects of the deposition testimony or if the affiant lacked access to material facts and the affidavit sets forth the newly-discovered evidence." See also Franks v. Nimmo, 796 F.2d 1230, 1237 (10th Cir.1986) (same).
 
 
 36
 We conclude that the Foster- Radobenko rule does not automatically dispose of every case in which a contradictory affidavit is introduced to explain portions of earlier deposition testimony. Rather, the Radobenko court was concerned with "sham" testimony that flatly contradicts earlier testimony in an attempt to "create" an issue of fact and avoid summary judgment. Therefore, before applying the Radobenko sanction, the district court must make a factual determination that the contradiction was actually a "sham."
 
 
 37
 At the time the district court found Kennedy's later declaration to be an attempt to create a "sham issue of fact," we had not yet made clear that Radobenko does not apply to every instance when a later affidavit contradicts deposition testimony. We therefore do not know if the district court actually examined Kennedy's actions and made a finding of fact that they were a "sham." Accordingly we remand this case to the district court so that it may make that necessary determination. If after a hearing on the issue it does find a sham, then it shall rule anew on the motion for summary judgment. If it finds to the contrary, i.e., that the actions were the result of an honest discrepancy, a mistake, or the result of newly discovered evidence, then it shall entertain the respective cross-motions (including the new Jamison declaration) on the other grounds advanced by the parties. The summary judgment is therefore REVERSED and the case is REMANDED for further proceedings consistent with this opinion.
 
 
 
 [1]
 The Kennedys point out that $250,000 is "an amount that complied with ERISA's bonding statute." The statute provides, inter alia:
 The amount of such bond shall be ... not less than 10 per centum of the amount of funds handled. In no case shall such bond be less than $1,000 nor more than $500,000....
 29 U.S.C. § 1112(a) (1988). When the bond was issued, the Plan's assets were valued at approximately $1.6 million. The $250,000 Bond was therefore in compliance with section 1112(a).
 
 
 [2]
 Both parties agree that if the Plan was established and maintained in compliance with ERISA, ERISA law controls this dispute. Conversely, if the Plan does not comply with ERISA, California law controls. As a result, the only issue presented is whether or not the Plan is an ERISA plan. This case does not present the issue of whether ERISA "preempts" California law
 
 
 [3]
 ERISA authorizes the Secretary of Labor to "prescribe such regulations as he finds necessary or appropriate to carry out the provisions of this subchapter." 29 U.S.C. § 1135 (1988)
 
 
 [4]
 Before judgment for Allied was entered, the Kennedys filed a motion for reconsideration of the summary judgment order under Local Rule 7.16(c), claiming that the district judge failed to "consider material facts presented to the court before the decision." The Kennedys also sought relief under Fed.R.Civ.P. 59(e), in the event the court had entered judgment for Allied prior to the hearing on the motion. The district judge apparently treated the motion as one for relief from the summary judgment order under Fed.R.Civ.P. 60(b), based on "newly discovered evidence." The new evidence consisted of a second declaration from Paul Jamison, in which he stated that Ms. Miller was indeed a fully vested participant in the Plan. The district court disregarded the new Jamison declaration, holding that the Kennedys were "precluded from offering ... evidence [that] was prepared after the decision but with due diligence could have been presented prior to decision." Because we conclude that Drake Kennedy's declaration raised a preliminary issue of fact, we need not consider whether the district court erred in refusing to consider the second Jamison declaration