48 F.3d 404
 19 Employee Benefits Cas. 1326, Pens. Plan Guide P 23907B
George PETERSON, Plaintiff-Appellant,
v.
AMERICAN LIFE & HEALTH INSURANCE COMPANY; Creative Health
Programs; Pacific Southwest Association of Small
Employer Firms; Richard Reynolds,
Defendants-Appellees.
 No. 93-55973.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 8, 1994.
Decided Feb. 15, 1995.
 
 Robert S. Gianelli, Sherril Nell Babcock, Gianelli & Morris, Los Angeles, CA, for plaintiff-appellant.
 Joseph D. McNeil, Edward A. Stumpp, McNeil and Susson, Santa Ana, CA, for defendants-appellees.
 Appeal from the United States District Court for the Central District of California.
 Before: FLETCHER, THOMPSON, and RYMER, Circuit Judges.
 FLETCHER, Circuit Judge:
 
 
 1
 George Peterson appeals the district court's grant of summary judgment in favor of the defendants in his suit for benefits under a health insurance policy. We have jurisdiction and affirm.
 
 I. BACKGROUND
 
 2
 Peterson is a partner in Quivira Marine Service Center ("Quivira"). Quivira applied to American Life and Health Insurance Co. ("American") for a short-term group policy through the Pacific Southwest Association of Small Employer Firms ("PSA") to provide health insurance for three persons: Peterson, his partner, and their employee. The American policy was intended to provide coverage while Quivira secured a long-term policy with another insurer. Quivira moved coverage for Peterson's partner and the employee to another insurer as intended; Peterson, however, remained on the American policy because he failed a physical examination required by the new insurer.
 
 
 3
 After Peterson's partner and employee were removed from the American policy, Peterson underwent emergency quintuple coronary bypass surgery. American denied Peterson's claims for expenses associated with the surgery on the basis of an exclusion in the policy stating that no benefits are payable for "[a]ny condition of the tonsils or adenoids, laminectomy, discectomy, spinal fusion, disease or disorder of the reproductive system, gall bladder, rectum, varicose veins, or conditions requiring bypass surgery " (emphasis added).
 
 
 4
 Peterson filed a complaint in California state court against American,[1] alleging various state common law claims. American removed the suit to the district court under the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. Sec. 1001, et seq., then moved to dismiss all of Petersons' claims on the ground that ERISA preempted them. In response, Peterson moved to remand the action to state court, alleging that the American policy was not part of an ERISA plan and, therefore, the district court lacked subject matter jurisdiction. The district court determined that ERISA governed the American policy and preempted Peterson's state law claims. Consequently, the court denied Peterson's motion to remand and granted American's motion to dismiss, with leave to amend.
 
 
 5
 Peterson filed a First Amended Complaint pleading a claim for benefits under ERISA. Peterson retained in the amended complaint his state common law claims to preserve them for appeal, and, pursuant to the defendants' motion, the court dismissed the common law causes of action without leave to amend. Peterson also argued that Cal.Ins.Code Sec. 10291.5(b)(7) required American to cover coronary bypass surgery and that this requirement was not preempted by ERISA. The district court granted summary judgment in favor of American, finding that ERISA preempted Peterson's state statutory claim and that the policy's exclusion of bypass surgery was unambiguous and enforceable.
 
 
 6
 II. SUBJECT MATTER JURISDICTION OVER AN ERISA PLAN
 
 
 7
 The district court held that the American policy was part of an "employee welfare benefit plan" as defined in 29 U.S.C. Sec. 1002(1) and that, as a "beneficiary" of the policy, Peterson had standing to bring a civil suit to enforce ERISA. Accordingly, the district court determined that ERISA governed Peterson's claim and that the court had subject matter jurisdiction. We agree.
 
 A. Existence of an ERISA Plan
 
 8
 An "employee welfare benefit plan" governed by ERISA is:
 
 
 9
 any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits ...
 
 
 10
 29 U.S.C. Sec. 1002(1) (emphasis added).
 
 
 11
 The regulations implementing this section provide that a plan "under which no employees are participants" does not constitute an ERISA employee benefit plan. 29 C.F.R. Sec. 2510.3-3(b). Neither an owner of a business nor a partner in a partnership can constitute an "employee" for purposes of determining the existence of an ERISA plan. 29 C.F.R. Sec. 2510.3-3(c)(1), (2); see also Kennedy v. Allied Mut. Ins. Co., 952 F.2d 262, 264 (9th Cir.1991) (ERISA does not govern a plan whose only fully vested beneficiaries are a company's owners).
 
 
 12
 Peterson maintains that the American policy does not constitute an ERISA employee benefit plan because, at the time of his bypass surgery, it covered only him, a partner in the Quivira partnership. However, the fact that the American policy covered only a Quivira partner at the time of Peterson's surgery is not determinative.[2] We conclude that the American policy was just one component of Quivira's employee benefit program and that the program, taken as a whole, constitutes an ERISA plan.
 
 
 13
 At all times relevant to this action, Quivira continued to provide insurance to at least one non-partner employee, albeit not under the American policy. See Kennedy, 952 F.2d at 264 (coverage of even one non-owner employee is sufficient to bring a policy within ERISA's scope); Madonia v. Blue Cross & Blue Shield of Virginia, 11 F.3d 444, 448 (4th Cir.1993), cert. denied, --- U.S. ----, 114 S.Ct. 1401, 128 L.Ed.2d 74 (1994) (coverage of non-owner employees rendered policy an ERISA plan). Quivira not only paid its partners' and employees' insurance premiums but also played an active role in the administration of the coverage, including choosing the insurance, adding and deleting employees and partners from various policies, contacting insurance companies for employees and partners, and distributing information relevant to the coverage.
 
 
 14
 Moreover, the American policy originally covered a non-partner employee in addition to Peterson and his partner. A policy is governed by ERISA if it is "established or maintained by an employer ... for the purpose of providing [medical insurance] for its participants or their beneficiaries." 29 U.S.C. Sec. 1002(1) (emphasis added). That the American policy is governed by ERISA finds further support in our cases addressing "conversion" policies, where an employee converts his group policy to an individual policy when he leaves his employment. We have held repeatedly that, because these policies are derived from ERISA plans, they continue to be governed by ERISA even after conversion. Qualls v. Blue Cross of California, Inc., 22 F.3d 839, 843 n. 4 (9th Cir.1994); Greany v. Western Farm Bureau Life Ins. Co., 973 F.2d 812, 817 (9th Cir.1992); Tingey v. Pixley-Richards West, Inc., 953 F.2d 1124, 1132-33 (9th Cir.1992).
 
 
 15
 Because the American policy was purchased by Quivira for the purpose of fulfilling its plan to provide benefits to its employees as well as its partners, the policy is part of an ERISA plan and is governed by ERISA.
 
 B. Standing to Bring an ERISA Claim
 
 16
 Peterson maintains that his claim for benefits nevertheless is governed by state law because, as a partner, he does not have standing to bring an action for benefits under ERISA. A civil action under ERISA may be brought by "a participant or beneficiary." 29 U.S.C. Sec. 1132(a)(1). A "participant" is "any employee or former employee of an employer." Id. Sec. 1002(7). A "beneficiary" is "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." Id. Sec. 1002(8).
 
 
 17
 This court already has addressed, in Harper v. American Chambers Life Ins. Co., 898 F.2d 1432 (9th Cir.1990), whether a partner insured by a policy that is part of an ERISA plan has standing to bring a civil suit to enforce ERISA. In Harper, we held that a partner could not bring a suit as a "participant" because only employees are participants, but that a partner could enjoy standing as a "beneficiary:"
 
 
 18
 First, we note that the broad statutory definition of a "person" for ERISA purposes certainly encompasses [the partners]: "the term 'person' means an individual, partnership, joint venture, corporation, mutual company, joint-stock company, trust, estate, unincorporated organization, association, or employee organization." See 29 U.S.C. Sec. 1002(9). Second, [the partners] are "person[s] designated ... by the terms of an employee benefit plan" if the [insurance] policy is an ERISA plan. 29 U.S.C. Sec. 1002(8).... By the plain terms of the statutes defining "person" and "beneficiary," then, [the partners] are ERISA beneficiaries of the [insurance] policy.
 
 
 19
 898 F.2d at 1434.
 
 
 20
 Despite Peterson's arguments to the contrary, neither our decision in Kennedy nor the Supreme Court's in Nationwide Mutual Insurance Co. v. Darden, 503 U.S. 318, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992), requires us to depart from our holding in Harper. Kennedy involved an attempt by two business owners to enforce an insurance policy under ERISA. To determine whether the policy was part of an ERISA plan, we remanded to the district court to determine whether the policy covered any non-owner employees. 952 F.2d at 267. Necessarily underlying our remand was the assumption that, if other employees were covered, the plan was governed by ERISA and the owners' ERISA suit could proceed. Had we believed that the owners lacked standing to enforce ERISA, even if the policy were part of an ERISA plan, we would have ruled on that basis. Thus, Kennedy actually demonstrates Harper's continued vitality.
 
 
 21
 In Darden, the Supreme Court clarified the definition of "participant" and held that traditional agency principles govern whether a person is an "employee" within the definition of "participant," 503 U.S. at 322-28, 112 S.Ct. at 1348-50; the Court did not address the scope of "beneficiary" standing under ERISA. Although the Court stated as an introduction to its discussion that the plaintiff's suit could survive "only if" he was an employee, id. at 320-22, 112 S.Ct. at 1347, we do not interpret this single sentence as undermining Harper. The plaintiff in Darden did not claim to have standing as a beneficiary, only as a participant, see Nationwide Mut. Ins. Co. v. Darden, 796 F.2d 701, 704 n. 3 (4th Cir.1986), rev'd, 503 U.S. 318, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992); therefore, the issue decided in Harper was not considered by either the Fourth Circuit or the Supreme Court.
 
 
 22
 Peterson apparently would have us limit the definition of "beneficiary" to persons such as spouses and dependents, designated by participants to receive benefits. We conclude, though, that any person designated to receive benefits from a policy that is part of an ERISA plan may bring a civil suit to enforce ERISA. To hold otherwise would create the anomaly of requiring some insureds to pursue benefit claims under state law while requiring others covered by the identical policy to proceed under ERISA. Such a scenario would frustrate Congress's intent of achieving uniformity in the law governing employment benefits. More importantly, ERISA's plain language includes as beneficiaries not only those "designated by a participant," but also those who are designated to receive benefits "by the terms of an employee benefit plan." 29 U.S.C. Sec. 1002(8) (emphasis added). Our interpretation in Harper of this clear statutory language is sound and has not been undermined. Peterson has standing to bring a civil suit to enforce ERISA.
 
 III. STATE LAW CLAIMS
 
 23
 Peterson concedes that ERISA preempts his state common law claims if the American policy is part of an ERISA plan and if he has standing to enforce ERISA. ERISA's preemption clause provides that, "Except as provided in subsection (b) of this section, [ERISA] shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan ..." 29 U.S.C. Sec. 1144(a). ERISA preemption is "conspicuous for its breadth," FMC Corp. v. Holliday, 498 U.S. 52, 58, 111 S.Ct. 403, 407, 112 L.Ed.2d 356 (1990), and ERISA "contains one of the broadest preemption clauses ever enacted by Congress." Evans v. Safeco Life Ins. Co., 916 F.2d 1437, 1439 (9th Cir.1990); accord Aloha Airlines, Inc. v. Ahue, 12 F.3d 1498, 1501 (9th Cir.1993); Greany, 973 F.2d at 817.
 
 
 24
 Under ERISA's "savings clause," however, ERISA does not preempt "any law of any State which regulates insurance ..." 29 U.S.C. Sec. 1144(b)(2)(A). A state law "regulates insurance" and is therefore saved from preemption if it is limited to the insurance industry, has the effect of transferring or spreading a policyholder's risk, and is an integral part of the relationship between the insured and insurer. Metropolitan Life Ins. Co. v. Massachusetts, 471 U.S. 724, 743, 105 S.Ct. 2380, 2390-91, 85 L.Ed.2d 728 (1985).
 
 
 25
 ERISA does not preempt state statutes requiring the inclusion of particular types of benefits in insurance policies. The Supreme Court made clear in Metropolitan that such "mandated benefit" statutes "regulate insurance" and are saved from preemption. Id. at 742-44, 105 S.Ct. at 2390-91. Peterson maintains that Cal.Ins.Code Sec. 10291.5(b)(7) and its implementing regulations required American to provide benefits for coronary bypass surgery and that, together, the statute and regulations constitute a "mandated benefit" requirement saved from preemption under Metropolitan.
 
 
 26
 Although we agree that ERISA does not preclude the State of California from requiring insurers to provide coverage for coronary bypass surgery, nothing in the California Insurance Codes mandates such coverage. Cal.Ins.Code Sec. 10291.5(b)(7) provides that California's Insurance Commissioner "shall not approve" any insurance policy if "any benefit of the policy is, or the benefits of the policy as a whole are, not sufficient to be of real economic value to the insured." Peterson maintains that the American policy's exclusion of costs associated with bypass surgery renders it without real economic value. Under regulations promulgated by the Insurance Commissioner, defining "standards for determining conformity" with section 10291.5(b)(7), a policy is presumed to lack real economic value "if it is subject to exceptions" other than those specifically enumerated. 10 Cal.Code Regs. Sec. 2220.8(a). The list of permissible exclusions does not include costs associated with bypass surgery. Id. Sec. 2220.8(b).
 
 
 27
 However, Cal.Ins.Code Sec. 10291.5(b)(7) does not apply to "group disability insurance," Cal.Ins.Code Sec. 10270.95, and the Commissioner's regulations implementing section 10291.5(b)(7) apply only to "individual disability policies." To avoid this exception, Peterson maintains that, despite its label as a "group policy," the American policy is not truly a group policy. To constitute "group disability insurance" under California law, a policy must be issued to an association "formed and continuously maintained in good faith for purposes other than that of obtaining insurance." Cal.Ins.Code Sec. 10270.5(a)(3). Peterson contends that PSA was formed for the sole purpose of providing insurance through American. Therefore, he argues, the American policy is not a "true" group policy and, under 10 Cal.Code Regs. Sec. 2220.8, should have included bypass surgery coverage or is presumed to lack real economic value.
 
 
 28
 Peterson's attempt to liken Cal.Ins.Code Sec. 10291.5(b)(7) to a mandated benefit statute falls short. Unlike a mandated benefit statute, Cal.Ins.Code Sec. 10291.5(b)(7) does not require insurers to provide coverage for costs associated with a particular condition or procedure. It simply establishes the parameters within which the Commissioner exercises his discretion to approve or disapprove insurance policies. If the Commissioner approves a policy that does not comply with the requirements of section 10291.5(b)(7), he has the authority to revoke his approval for good cause. 10 Cal.Code Regs. 2196.4 (good cause to revoke approval of policy that is "unfair, unreasonable or otherwise inconsistent with the provisions of the Insurance Code").
 
 
 29
 The Commissioner also has an obligation to fulfill his duties under the California Insurance Code. Cal.Ins.Code Sec. 12921. If an insured such as Peterson believes that the Commissioner has abused his discretion by approving a policy in violation of either Sec. 10291.5(b)(7) of the Code or the Commissioner's own regulations implementing the Code, then he may petition for a writ of mandamus requiring the Commissioner to revoke his approval. Cal.Code Civ.Proc. Sec. 1094.5; see generally Bixby v. Pierno, 4 Cal.3d 130, 93 Cal.Rptr. 234, 481 P.2d 242 (1971).
 
 
 30
 However, we do not believe that, in enacting section 10291.5(b)(7), the California legislature intended to permit an insured to reform the nature of his policy and obtain benefits for which he never bargained by engaging courts to second-guess the Commissioner's approval of the policy as providing "group" insurance. Regardless of whether the Insurance Commissioner should have approved the policy,[3] an otherwise valid policy is a binding contract and governs the obligations of the parties until the Commissioner revokes his approval. Had the California legislature intended otherwise, it would not have provided that a policy approved by the Commissioner, "as between the insurer and the insured," is "conclusively presumed to comply with" section 10291.5(b)(7). Cal.Ins.Code Sec. 10291.5(k); see also Producers Dairy Delivery Co. v. Sentry Ins. Co., 41 Cal.3d 903, 226 Cal.Rptr. 558, 565, 718 P.2d 920 (1986) ("[W]e find persuasive the argument that the commissioner would not likely approve a policy violating one of his own rules."). The American policy, labeled a "group" policy, was approved by the Insurance Commissioner. In light of this approval, we do not see how a statute providing the criteria for such approval enables Peterson to maintain a private action against American to rewrite the terms of his policy.
 
 IV. INTERPRETATION OF THE AMERICAN POLICY
 
 31
 The district court held that the American policy's exclusion of bypass surgery was unambiguous and enforceable. We agree.
 
 
 32
 As an initial matter, we dispose of Peterson's argument that we adopt as federal common law a prohibition against exclusions of bypass surgery. Although Congress has authorized us "to formulate a nationally uniform federal common law to supplement the explicit provisions and general policies set out in ERISA," Menhorn v. Firestone Tire & Rubber Co., 738 F.2d 1496, 1500 (9th Cir.1984), mandating specific types of coverage and defining the scope of such a mandate would exceed the scope of the authority granted because Congress did not regulate the substantive content of welfare benefit plans, Metropolitan, 471 U.S. at 732, 105 S.Ct. at 2385. As we stated in Blau v. Del Monte Corp., 748 F.2d 1348, 1353 (9th Cir.1984), cert. denied, 474 U.S. 865, 106 S.Ct. 183, 88 L.Ed.2d 152 (1985), "ERISA mandates no minimum substantive content for employee welfare benefit plans, and therefore a court has no authority to draft the substantive content of such plans." See also Davidowitz v. Delta Dental Plan of California, Inc., 946 F.2d 1476, 1480-81 (9th Cir.1991) (refusing to prohibit non-assignment clauses in welfare benefit plans under federal common law). To do so would go beyond "filling an interstitial 'gap' in ERISA," DeVoll v. Burdick Painting, Inc., 35 F.3d 408, 412 (9th Cir.1994), and would run counter to the Supreme Court's interpretation: "The authority of courts to develop a 'federal common law' under ERISA is not the authority to revise the text of the statute." Mertens v. Hewitt Assocs., --- U.S. ----, ----, 113 S.Ct. 2063, 2070, 124 L.Ed.2d 161 (1993) (citations omitted).
 
 
 33
 Peterson argues that, even under existing federal law, the exclusion of bypass surgery in the American policy is ambiguous and therefore unenforceable. He maintains that the exclusion of "bypass surgery" does not necessarily exclude coronary bypass surgery because the term's context in the policy suggests that it excludes only unnecessary bypass surgeries, such as those used to treat morbid obesity. In Peterson's view, if American intended to exclude treatment of heart disease, one of the nation's biggest killers, it should have highlighted the exclusion prominently rather than place it at the end of a paragraph including procedures that are frequently unnecessary.
 
 
 34
 Peterson maintains that the exclusion is unenforceable under the doctrines of "contra proferentem " and "reasonable expectations." Under the doctrine of contra proferentem, we construe ambiguous language in an insurance contract against the insurer. See Kunin v. Benefit Trust Life Ins. Co., 910 F.2d 534, 538-39 (9th Cir.), cert. denied, 498 U.S. 1013, 111 S.Ct. 581, 112 L.Ed.2d 587 (1990). Under the "reasonable expectations" doctrine, as a matter of federal common law governing ERISA contracts, even an unambiguous exclusion may be unenforceable unless it is sufficiently "clear, plain, and conspicuous" to overcome a layperson's reasonable expectations. Saltarelli v. Bob Baker Group Medical Trust, 35 F.3d 382, 385-86 (9th Cir.1994).
 
 
 35
 Peterson's reliance on Saltarelli and Kunin is misplaced. The doctrines enunciated in those cases apply only when a provision in an insurance policy is either ambiguous or not sufficiently conspicuous. We have no doubt that the term "bypass surgery" encompasses coronary bypass surgery; it stretches the imagination to suggest that a reasonable person would understand the term to include only gastric bypass to control morbid obesity. Moreover, the exclusion of bypass surgery not only was included in the policy, but also was highlighted as one of only four exclusions in a "Statement of Understanding" signed by Peterson. The exclusion was unambiguous and conspicuous.
 
 V. CONCLUSION
 
 36
 The American policy was part of an ERISA plan and Peterson had standing to bring a civil suit to enforce ERISA as a beneficiary of the policy. His state common law claims are preempted, and he has no claim under state statutory law. The exclusion under which American denied benefits for Peterson's coronary bypass surgery was unambiguous, conspicuous and enforceable. We affirm the district court's grant of summary judgment.
 
 
 37
 AFFIRMED.
 
 
 
 [1]
 Other defendants referred to collectively as "American" are PSA; American's parent, Creative Health Programs; and Richard G. Reynolds. Reynolds was dismissed from the suit, and Peterson does not appeal
 
 
 [2]
 American argues that our decision in Harper v. American Chambers Life Ins. Co., 898 F.2d 1432 (9th Cir.1990), supports the position that the American policy is part of an ERISA plan. However, in Harper, we refused to decide whether a plan benefitting only a company's partners was an ERISA plan, stating that the case's record was too "scant" to support any position sufficiently. Id. at 1433. As explained infra, Harper simply states that, if a plan is governed by ERISA, an employer benefitting from the plan may bring a civil suit to enforce it
 
 
 [3]
 We do not address whether, if characterized as an individual policy, the American policy does in fact lack real economic value under section 10291.5(b)(7). Even with the policy's exclusion for costs associated with bypass surgery, the Commissioner could have approved the policy if American "demonstrate[d] to the satisfaction of the Commissioner the need and the reasonable scope of the exception ... in writing to the Commissioner." 10 Cal.Code Regs. Sec. 2220.9