**Dana LaVENTURE, Plaintiff–Appellant,**

v.

**The PRUDENTIAL INSURANCE COMPANY OF AMERICA, Defendant–Appellee.**

No. 99–55990.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 16, 2000

Filed Jan. 19, 2001

Jeffrey C. Metzger, Laguna Hills, California, for the plaintiff-appellant.

Ronald K. Alberts, Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone, Marina Del Rey, California, for the defendant-appellee.

Before: T.G. NELSON and W. FLETCHER, Circuit Judges, and REED,* District Judge.

REED, District Judge:

This action arises from the denial of disability income insurance benefits. Dana LaVenture ("LaVenture") appeals the district court's summary judgment order in favor of Appellee Prudential Life & Acci-dent Insurance Company ("Prudential"). The district court determined that LaVenture's disability policy was part of an overall ERISA benefits plan. Therefore, the district court dismissed LaVenture's complaint, which sought damages for breach of contract and insurance bad faith, because ERISA preempts all state law claims. We reverse and remand.

## I. FACTS AND PROCEDURAL BACKGROUND

Thomas and Dana LaVenture are husband and wife and the sole shareholders of Pacific Graphics, Inc., ("PGI") a commercial printing company incorporated in 1992.[1]

In 1992, the business purchased a health insurance policy covering only Thomas and Dana LaVenture. In the spring of 1994, PGI received a solicitation from Printers Industries of America ("PIA")[2] for a long-term disability insurance policy issued through the Printers Disability Trust ("PDT"). Mr. LaVenture completed and mailed the application. The disability insurance was to cover only Mr. and Mrs. LaVenture. The application contained the following statement under the heading "how to enroll": "Your insurance will be effective on the first of the month following its acceptance by the administrator."

In October of 1994, Mr. LaVenture received a response letter from PDT, along with a "Participating Agreement," which indicated that the disability insurance coverage would become effective on November 1, 1994.

Between when Mr. LaVenture filed the application and when he received the Participating Agreement, Mrs. LaVenture's health began to decline. In August of 1994, she began experiencing joint pain, discomfort in her left side, depression,

---

* The Honorable Edward C. Reed, Jr., Senior United States District Judge for the District of Nevada, sitting by designation.

1. Mr. and Mrs. LaVenture operated their business as a sole proprietorship for a short time before incorporating.

2. PIA is an industry trade group of which both Mr. and Mrs. LaVenture are members.

and anxiety. On November 12, 1994, Dr. Robing Dore, a rheumatologist, diagnosed LaVenture with fibromyalgia and recommended that LaVenture stop working because she was totally disabled.

On May 1, 1995, Mr. and Mrs. LaVenture hired their first full-time employee and provided company paid health insurance to the new employee. They did not, however, offer the new employee disability insurance. Since May of 1995, Mr. and Mrs. LaVenture have hired two additional employees who have also been offered health insurance but not disability insurance. It is uncontroverted that no one associated with the company, other than the LaVentures, has ever been provided any disability benefit or disability insurance policy by PGI.

In June of 1995, Dr. Dore diagnosed appellant with Lyme disease in addition to her fibromyalgia. On February 26, 1996, LaVenture submitted a disability claim to PDT and Prudential on three conditions: fibromyalgia, Lyme disease, and herniated discs.[3] The claim included a statement by Dr. Dore dated January 30, 1996. Dr. Dore stated that LaVenture was totally disabled due to fibromyalgia and Lyme disease, and that she had been totally disabled since November 8, 1994.

On July 29, 1996, Maureen Majewski, Disability Claim Manager for Prudential, wrote a letter denying the claim for disability benefits. The letter stated:

> Based on medical information submitted by Dr. James Grimes, it was documented that you were treated on August 15, 1994, August 18, 1994, September 21, 1994, September 30, 1994, October 4, 1994, October 18, 1994 for myalgia/mitositis, back pain and fibromyosis. In addition, laboratory testing was performed on August 15, 1994 and September 30, 1994, as well as a chest x-ray and electrocardiogram. Since charges were incurred and treatment was rendered within 90 days of your coverage effective date, benefits are not payable under the policy.

> Based on the medical records, you were diagnosed with Lyme Disease in July of 1995. However, the disability determination is based on the information available November 8, 1994. Based on the original information submitted with the claim, the conditions were pre-existing. Lyme Disease was not diagnosed until after you left work. Unfortunately, the claim was submitted late, but the disability determination is based on your condition on November 8, 1994.

On August 4, 1997, Prudential sent a letter reaffirming its decision to deny benefits on the grounds of the preexisting condition exclusion in the policy.

. On April 16, 1998, LaVenture filed a complaint in California state court which sought damages for emotional distress, breach of contract, and breach of the implied covenant of good faith and fair dealing. On May 22, 1998, Prudential noticed removal of the action to the United States District Court for the Central District of California. The notice of removal alleged jurisdiction in the district court based on federal question jurisdiction under ERISA as well as diversity of citizenship.[4]

On April 23, 1999, Prudential moved for summary judgment on all of LaVenture's claims. The district court entered an order granting judgment for defendant on all claims on May 26, 1999. The district judge thereafter signed a Statement of Uncontroverted Facts and Conclusions of Law on June 1, 1999. LaVenture timely appealed.

## II. DISCUSSION

This case involves an issue of first impression in this circuit—whether a disabili-

---

**3.** Currently, LaVenture has a catheter in her chest for use in administering daily intravenous antibiotics, sleeps up to 16 hours a day, and suffers from severe joint pain, fatigue, and esophageal spasms.

**4.** Appellant admits that jurisdiction is proper on the grounds of diversity of citizenship but disputes that any jurisdiction lies under ERISA.

ty insurance policy, not originally covered by ERISA, is converted into an ERISA plan merely because a company offers its employees unrelated health insurance coverage. We hold that it is not.

### A. *Applicability of ERISA*

■ ERISA applies where an "employee benefit plan" is in place. *See District of Columbia v. Greater Washington Bd. of Trade,* 506 U.S. 125, 127, 113 S.Ct. 580, 121 L.Ed.2d 513 (1992). An employee benefit plan is defined by statute as "an employee welfare benefit plan or an employee pension benefit plan or a plan which is both an employee welfare benefit plan and an employee pension benefit plan." 29 U.S.C. § 1002(3). An "employee welfare benefit plan" governed by ERISA is:

> any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, scholarship funds, or prepaid legal services, or....

*Id.* § 1002(1).

■ The regulations implementing this section provide that a plan "under which no employees are participants" does not constitute an ERISA employee benefit plan. 29 C.F.R. § 2510.3–3(b). An owner of a business is not considered an "employee" for purposes of determining the existence of an ERISA plan. 29 C.F.R. § 2510.3–3(c)(1),(2);[5] *see also Kennedy v. Allied Mut. Ins. Co.,* 952 F.2d 262, 264 (9th Cir.1991)(ERISA does not govern a plan whose only fully vested beneficiaries are a company's owners).

The parties agree that if the only policy at issue in this case were the disability policy, it would not be subject to ERISA because the only individuals covered under the policy are Mr. and Mrs. LaVenture, the owners of the business. Prudential maintains that the disability insurance policy became an ERISA employee benefit plan when the LaVentures provided health benefits to their employees in 1995, before LaVenture filed her disability benefits claim. The LaVentures' disability policy became effective in November of 1994. In June of 1995, the LaVentures offered their employees health and dental benefits. The health insurance plan offered to the employees was subject to ERISA. Prudential argues that in June of 1995, the disability policy also became subject to ERISA because once the business offered a welfare benefit plan subject to ERISA all the benefits offered by the business became subject to ERISA. Prudential contends that in determining whether an employee welfare benefit plan exists, a company's entire benefits program must be considered as a whole.

Prudential relies on *Peterson v. American Life & Health Ins. Co.,* 48 F.3d 404 (9th Cir.1995). In that case, we held that Peterson's health insurance policy "was just one component of [the company's] employee benefit program and that the program, taken as a whole, constitutes an ERISA plan." *Id.* at 407. However, *Peterson* addressed a different issue and is therefore not controlling. In *Peterson,* the issue was whether an ERISA plan ceased being such when the employees it originally covered depart, leaving only the business owner as a participant.

The question before this panel, in contrast, is whether LaVenture's disability insurance policy, which did not originate as

---

**5.** Title 29 C.F.R. § 2510.3–3(c)(1) provides that:

> An individual and his or her spouse shall not be deemed to be employees with respect

to a trade or business, whether incorporated or unincorporated, which is wholly owned by the individual or by the individual and his or her spouse....

an ERISA plan, becomes such a plan when the business provides a separate benefits plan to its employees under a plan that is subject to ERISA. Our circuit has not directly addressed this issue, except to suggest in *In re Watson*, 161 F.3d 593, 596 (9th Cir.1998),[6] that a company may offer more than one benefit plan, one covering only the owner of the business and the other covering the business's employees, and maintain those two plans as independent plans under ERISA.[7]

Other courts that have addressed this issue have concluded that a benefit plan that commenced as a non-ERISA plan is not converted into an ERISA plan simply because the employer sponsors a separate benefits plan subject to ERISA. *See, e.g., Slamen v. Paul Revere Life Ins. Co.*, 166 F.3d 1102 (11th Cir.1999); *Kemp v. Int'l Bus. Mach. Corp.*, 109 F.3d 708 (11th Cir. 1997); *Robertson v. Alexander Grant & Co.*, 798 F.2d 868 (5th Cir.1986). We discuss these cases in turn.

In *Kemp*, the Eleventh Circuit held that "non-ERISA benefits do not fall within ERISA's reach merely because they are included in a multibenefit plan along with ERISA benefits." 109 F.3d at 713. *Kemp* involved state law claims made by beneficiaries of IBM's Retirement Education Assistance Program ("REAP"). The REAP program would not by itself have been regulated under ERISA. IBM argued, however, that the REAP program was part of a multibenefit plan containing some benefits that were covered under ERISA, and therefore the REAP program should also be controlled by ERISA. *Id.* at 710. In reaching its decision, the Eleventh Cir-

cuit reasoned that a plan is an "employee welfare benefit plan" only to the extent that the plan is "maintained for the purpose of providing the types of benefits Congress decided to protect in ERISA." *Id.* at 713. The court concluded that non-ERISA benefits do not become subject to ERISA merely because they are included in a multibenefit plan that includes ERISA benefits. *Id.*

In *Slamen*, 166 F.3d at 1102, the Eleventh Circuit addressed the issue directly before this court. Dr. Slamen was a dentist and the sole owner of a professional corporation bearing his name. On February 1, 1981, Slamen's practice established an ERISA health plan providing health and life insurance coverage for Slamen and his employees. In 1985, Slamen purchased a disability insurance policy from Paul Revere, which covered only himself. *Id.* at 1103. The issue before the Eleventh Circuit was whether Slamen's disability insurance policy was an ERISA plan. The Eleventh Circuit held it was not. The court reasoned that because the disability policy covered only Slamen, no employees received any benefits under the plan, and since nothing in the record showed that the disability policy had any relationship to the other benefits provided by Slamen to his employees, the disability policy was not covered by ERISA. *Id.* at 1105. The court noted that "the two policies were purchased at different times, from different insurers, and for different purposes. The first policy covers Slamen's employees as well as himself, while the second policy only covers Slamen and was not designed to benefit Slamen's employees." *Id.*

---

**6.** The issue in *In re Watson*, 161 F.3d 593 (9th Cir.1998), was whether the debtor's profit sharing plan was excludable from the bankruptcy estate under 11 U.S.C. § 541(c)(2) because it was subject to ERISA. Watson argued that his plan was subject to ERISA because he was an "employee" under ERISA despite the fact that he was the sole shareholder of his corporation and the sole participant and beneficiary of the plan at issue. *Id.* at 595. This court affirmed the bankruptcy court's holding that the plan was

not subject to ERISA because it never provided benefits to employees and never had any participants other than Watson. *Id.* at 594.

**7.** Watson also contended that his plan was subject to ERISA because it was sufficiently related to the plan covering his nurse employees. The court was not persuaded and stated that "even if the plans were created simultaneously or shared other common characteristics, they are independent plans under ERISA." *Id.* at 596 n. 4.

The Fifth Circuit applied similar reasoning in *Robertson*, 798 F.2d at 868, in holding that ERISA did not apply to a plan covering only partners. The court rejected the argument that ERISA applied because the plan also covered principals, a class of employees. *Id.* at 871. The court held that applying ERISA to the plan covering only partners

> ignores the fact that the plans, however similar, are two separate plans. The plan covering the partners does not pay any benefits to principals, and the plan covering principals does not pay any benefits to partners. Since the plans are separate, the plan covering partners covers only partners, and the district court correctly ruled that the plan does not cover employees other than partners.

*Id.* at 871–72.

We find the reasoning articulated in the aforementioned cases equally applicable to this case. It is uncontroverted that no one other than the LaVentures has ever been provided any disability benefit or disability insurance policy. Standing alone, the disability insurance policy would not be subject to ERISA. ERISA clearly excludes benefit plans covering only owners from ERISA's scope.

Congress enacted ERISA to correct abuses occurring in the administration and investment of private retirement plans and employee welfare plans. *See Robertson*, 798 F.2d at 870 (citing S.REP. No. 127, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Ad. News 4838, 4838–44). Employees in the traditional employer-employee relationship are more vulnerable to abuses because they lack control and input over pension plan management. *Id.* This concern does not arise where the benefit plan covers only the employer; such plans are excluded from ERISA's broad scope because "[w]hen the employee and employer are one and the same, there is little need to regulate plan administration." *Meredith v. Time Ins. Co.*, 980 F.2d 352, 358 (5th Cir.1993).

■ LaVenture's disability insurance is not an ERISA plan because all of the benefits flow to the owner. We agree with the Eleventh Circuit's policy statement that "[i]n light of the clear exclusion of benefit plans covering only owners from ERISA's scope, ... it makes little sense to treat a benefit plan, which covers only a business owner" as part of the employer's employee benefit program. *See Slamen*, 166 F.3d at 1106.

■ In addition, Prudential produced no evidence to establish that the disability policy and health plan were intertwined so as to constitute one overall benefit plan. *See, e.g., Robertson*, 798 F.2d at 871–72 (holding that although the provisions of the partners' retirement plan and the principals' retirement plans are nearly identical, the two plans are separate because the plan covering partners covers only partners and the plan covering principals covers only principals). On the contrary, the evidence establishes that the two plans bear no relationship to one another. The disability plan was purchased in 1994 and the health insurance policy covering employees was established in June of 1995. There is no evidence the two plans were initially established with the intent to create one benefit plan as in *Peterson*. The disability insurance plan has not covered or paid any benefits to any employees.

■ We therefore hold that LaVenture's disability insurance policy was not part of one common welfare benefit plan subject to ERISA. Because the disability policy is not governed by ERISA, LaVenture's cause of action is not preempted. Accordingly, the district court erred in granting summary judgment and dismissing appellant's complaint. We remand the case to the district court.

We also note that there is some inconsistency in the judgment issued by the district court and the court's conclusions of law. Although the district court held that ERISA governed the action and preempted LaVenture's causes of action, it never-

theless appears to have proceeded to rule on the merits of LaVenture's state causes of action in its conclusions of law. The judgment signed June 7, 1999, makes no reference to the state causes of action however. Therefore, having held that ERISA does not govern this action, we VACATE the findings and conclusions of law.

For the foregoing reasons, we RE-VERSE and REMAND for proceedings consistent with this opinion.