**Roy ROSS, Plaintiff–Appellant,**

v.

**CITY OF TOPPENISH; Adam Diaz, Police Officer, husband and marital community; Jane Doe Diaz, wife and marital community; Quinlan, Police Officer, husband and marital community; Jane Doe Quinlan, wife and marital community, Defendants–Appellees.**

No. 03–35234.

United States Court of Appeals, Ninth Circuit.

Submitted June 11, 2004.*

Decided July 15, 2004.

---

* This panel unanimously finds this case suitable for decision without oral argument. See Fed. R.App. P. 34(a)(2).

Glen A. Prior, Pacific Law Inc., P.S., Fife, WA, for Plaintiff–Appellant.

G. Scott Beyer, Esq., Menke Jackson Beyer Elofson, Yakima, WA, for Defendants–Appellees.

Before: PREGERSON, THOMPSON, and CALLAHAN, Circuit Judges.

### MEMORANDUM **

Roy Ross appeals the district court's summary judgment in favor of the defendants in his action alleging claims under 42 U.S.C. § 1983 and state law. We affirm the district court's summary judgment in favor of the City of Toppenish. Ross failed to make any showing that the

---

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

City or its police department had a policy or custom that led to his injuries, *see* *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), and § 1983 liability may not be predicated upon *respondeat superior*. *Id.* at 691, 98 S.Ct. 2018.

We affirm in part and reverse in part the district court's summary judgment in favor of police officers Adam Diaz and Jared Quinlan and their wives and marital communities.[1] Viewing the evidence in the light most favorable to Ross, there is no disputed issue of material fact from which a jury could find that the use of force by Diaz and Quinlan was excessive up to the time Ross was handcuffed; thereafter, there is such a dispute, and as to those alleged events the officers are not, on summary judgment, entitled to qualified immunity.

■ Ross alleges in his declaration that throughout his confrontation with the officers he was not combative, and that before he was handcuffed he was punched in the face, kneed in the chest and thrown to the ground. Ross testified in his deposition, however, that before he was handcuffed he "might" have approached the officers yelling and waving his arms, and that he "might" have made a fist at them. He also admitted that he reached for and touched Diaz's gun belt, and that he grabbed onto Diaz's wrists. Because Ross cannot create a genuine issue of disputed material fact by contradicting his own previous testimony, *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir.1991), we reject the portion of his declaration that contradicts

his deposition, credit his deposition testimony for purposes of this appeal, and conclude there is no genuine issue of material fact in dispute from which a jury could find that the officers used excessive force up to the point Ross was handcuffed. This includes the conduct by which Ross alleges he was punched in the face, kneed in the chest, taken down to the ground and handcuffed. Because the officers' use of force up to that point was not excessive as a matter of law, no constitutional violation occurred, and as to those events the district court's summary judgment determining that Diaz and Quinlan are entitled to summary judgment is affirmed.

■ We reverse, however, the portion of the district court's summary judgment by which the court determined that the officers were entitled to qualified immunity for their alleged conduct after Ross was handcuffed.[2] There are genuine issues of material fact as to whether, following the handcuffing, the officers used excessive force and, if so, whether the officers are entitled to qualified immunity.

In his deposition, Ross testified that after he reached for Diaz's gun belt and touched it, and while he was on his back with Diaz "astraddle" him, he said (apparently to himself) "Oh, and I just relaxed. I said let them do what they're going to do." At that point he was handcuffed. Officer Diaz in his October 4, 2002 declaration tends to corroborate this. Diaz stated that when Ross began to fall to the ground he grabbed at both officers' gun belts, and it was then that Diaz "delivered a single

---

1. To the extent we reverse the district court's summary judgment, we leave to the district court's initial determination the question whether the officers' wives and marital communities are proper defendants in this action.

2. Upon dismissing Ross's federal claims, the district court declined to exercise supplemen-

tal jurisdiction over the remaining state law claims and dismissed those claims without prejudice. Because we now reverse in part the district court's summary judgment, the district court may decide to reinstate the dismissed state law claims.

knee strike to Roy Ross's torso. This strike was intended to knock the breath out of him, so he would stop grabbing at us and submit to handcuffing and it had the desired effect." In a later declaration dated December 4, 2002, Diaz stated that Ross continued to struggle while he was on the ground "as we handcuffed him while he was face down." Diaz also stated in that declaration that "Mr. Ross actively struggled against us while we subdued and handcuffed him." The officers denied picking Ross up after he was handcuffed, throwing him to the ground and "intentionally" pushing his face in the gravel.

Considering all of this evidence, we conclude that there are triable issues of fact as to whether Ross continued to be combative after he was handcuffed, exactly when the handcuffing occurred, and what the officers did after Ross was handcuffed. How these disputed facts are resolved will determine the issues of whether the officers' actions after Ross was handcuffed constituted excessive force in violation of the Fourth Amendment, and whether the officers are entitled to qualified immunity for such conduct.

In a § 1983 action against a police officer predicated upon allegations of excessive force in violation of the Fourth Amendment, an officer who commits the alleged constitutional violation is nonetheless entitled to qualified immunity if it was not clearly established at the time of the officer's conduct that such conduct would violate the Fourth Amendment. *Saucier v. Katz*, 533 U.S. 194, 201, 205, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). "If the officer's mistake as to what the law requires is reasonable," he is entitled to qualified immunity. *Id.* at 205, 121 S.Ct. 2151.

If, following Ross's handcuffing, the officers did the things Ross says they did, a trier of fact could find that the officers used excessive force during the course of his arrest in violation of the Fourth Amendment. Moreover, if Ross was compliant after he was handcuffed, and if the officers nonetheless picked him up, threw him to the ground and rubbed his face in the gravel, the officers would not be entitled to qualified immunity. No reasonable officer could have thought in October 1999, when these events occurred, that he was entitled to use such gratuitous force. That a police officer is not entitled to use such force against a handcuffed, secured and compliant citizen was clearly established "years before 1999[.]" *Jones v. Buchanan*, 325 F.3d 520, 534 (4th Cir.2003).

Each party will bear his and its own costs on appeal.

AFFIRMED in part, REVERSED in part, and REMANDED.

CALLAHAN, Circuit Judge, dissenting, in part.

CALLAHAN, Circuit Judge.

I respectfully dissent from the majority's decision. Although I agree with my colleagues' affirmance of the summary judgment on behalf of the officers for actions they took up to the handcuffing of Ross, I disagree with the conclusion that there is a triable issue of fact as to the force used thereafter.

Under the totality of the circumstances, the officers did not use excessive force. Any scraping of Ross' face in the gravel was incidental to the struggle to subdue a struggling arrestee. The officers were faced with a highly recalcitrant and confrontational individual in a volatile and rapidly evolving situation. The record undisputedly shows that Ross grabbed Lieutenant Diaz's gun belt, a life-threatening action that would lead a reasonable officer to believe that an arrestee intended to use the gun against him. Ross' son Benjamin,

in spite of being handcuffed, at least once tried to escape during the incident.

The entire encounter transpired in a parking lot that happened to have a gravel surface, where it was likely that scraping would occur. The majority has already concluded that the police acted reasonably when they allegedly punched Ross in the face, kneed him in the chest (perhaps breaking one or more of his ribs), and handcuffed him. Yet, the majority would characterize the scraping from the gravel, which is de minimus by comparison, as evidence of excessive force.

In addition, the majority's disposition conflicts with the most recent law of this circuit. In *Butler v. Cervantes*, 370 F.3d 956 (9th Cir.2004), this court held:

> [I]f a defendant moving for summary judgment has produced enough evidence to require the plaintiff to go beyond his or her pleadings, the plaintiff must counter by producing evidence of his or her own. If in that circumstance the plaintiff fails to produce evidence, the district court is not required (or even allowed) to assume that the challenged factual allegations in the plaintiff's complaint are true.

At least two backup officers and two additional eyewitnesses testified that force was not used against Ross after he was handcuffed, and that Ross continued to struggle throughout the incident. Under *Butler*, this evidence is sufficient to require Ross to go beyond his allegations and produce contrary factual evidence to support his statements that excessive force was used after handcuffing.

The majority focuses on Ross' deposition testimony that he stopped resisting after he grabbed the officers' wrists to support allegations that he was passive once handcuffed. According to the majority, Ross' testimony indicated that "after he reached for Diaz's gun belt and touched it, and while he was on his back with Diaz 'astraddle him,' he said (apparently to himself) 'Oh, and I just relaxed. I said let them do what they're going to do." ' Because this testimony is just a reiteration of the kind of conclusory statements contained in Ross' complaint, it cannot create a genuine issue of material fact. *See Barnes v. Arden Mayfair Inc.*, 759 F.2d 656, 680–81 (9th Cir.1985).

The majority attempts to buttress Ross' account by cherry-picking corroborative statements from the record. When viewed in its entirety, however, the record does not yield a triable issue so much as it indicates that though Ross may have momentarily stopped resisting the officers when the wind was knocked out of him by the knee kick from Lieutenant Diaz, he continued to struggle after he was handcuffed.

Although Lieutenant Diaz indicated that the knee kick had the "desired effect" in subduing Ross so he could be handcuffed, he explicitly stated in police reports that Ross continued to struggle afterward: "Ofc. Quinlan and I had to complete the handcuffing of Mr. Roy Ross and watch Mr. Benjamin Ross at the same time. During the struggle, I had called for back-up and Ofc. Wuitschick and C/O Salinas arrived to assist. Mr. Roy Ross continued to struggle and we placed him in the back of the patrol unit." This account is corroborated by the deposition testimony of the backup officers and eyewitnesses. Thus, Lieutenant Diaz's testimony does not provide evidentiary support for Ross' statements; it negates them.

In sum, Ross' conclusory statements of what he allegedly said to himself is not sufficient under *Butler* to rebut the evidence that Ross struggled against the officers after he was handcuffed. Accordingly, the officers are entitled to immunity.

Any scraping of Ross' face in the gravel was de minimus and incidental to the officers' legitimate efforts to gain control of an angry and dangerous individual in a highly charged situation.

For the foregoing reasons, I dissent.