Michael McVEY, as Trustee of the Bittersweet Distributors, Inc. Defined Benefit Pension Plan and Trust, Plaintiff,

v.

Colin McVEY, as Executor, Trustee, and Representative of the Estate of Dawn M. McVey, pursuant to the Dawn M. McVey Living Trust, and as personal representative of Dawn McVey, an individual and participant in the Bittersweet Distributors, Inc. Defined Benefit Pension Plan and Trust, Defendant.

Case No. CV 12–06879 MMM (MANx).

United States District Court, C.D. California.

Signed June 16, 2014.

**ORDER GRANTING MOTION TO DISMISS**

MARGARET M. MORROW, District Judge.

On August 9, 2012, Michael McVey ("plaintiff") filed this action against Dawn McVey ("defendant").[1] Ms. McVey passed away on April 19, 2013, and the court thereafter entered an order on the parties' stipulation to substitute Colin McVey, Ms. McVey's executor, as the defendant in the action, and to permit plaintiff to file an amended complaint naming him as the defendant.[2] On August 2, 2013, plaintiff filed a first amended complaint against Colin McVey as executor, trustee, and representative of the Dawn M. McVey Living Trust, and as personal representative of Dawn McVey ("defendant").[3] On August 22, 2013, defendant filed a motion to dismiss,[4] which plaintiff opposes.[5] At the December 2, 2013 hearing on the motion, the court directed the parties to file supplemental briefing. Supplemental briefs were filed December 9, 2013.[6]

Aurora Leigh Perez Basa, Rebecca B. Mocciaro, Farmer and Ridley, Los Angeles, CA, for Plaintiff.

Teresa S. Renaker, Shira Wakschlag, Lewis Feinberg Lee Renaker and Jackson PC, Oakland, CA, for Defendant.

## I. BACKGROUND

### A. Requests for Judicial Notice

Defendant requests that the court take judicial notice of six documents in deciding his motion to dismiss:[7] (1) Dawn McVey's

1. Complaint, Docket No. 1 (Aug. 9, 2012).

2. Statement Noting Defendant's Death, Docket No. 54 (Apr. 22, 2013); Order on Stipulation and Joint Request for Leave of Court Permitting Plaintiff to Substitute Party Defendants and to File First Amended Complaint, Docket No. 66 (July 31, 2013).

3. First Amended Complaint ("FAC"), Docket No. 68 (Aug. 2, 2013).

4. Motion to Dismiss ("MTD"), Docket No. 71 (Aug. 22, 2013).

5. Opposition to Motion to Dismiss ("Opposition"), Docket No. 75 (Nov. 11, 2013).

6. Plaintiff's Supplemental Memorandum of Points and Authorities ("Plaintiff's Supp."), Docket No. 84 (Dec. 9, 2013); Defendant's Supplemental Memorandum of Points and Authorities ("Defendant's Supp."), Docket No. 85 (Dec. 9, 2013).

7. Defendant's Request for Judicial Notice ("Defendant's RJN"), Docket No. 72 (Aug. 22, 2013).

bench brief from the marital dissolution action between plaintiff and Dawn McVey in state court;[8] (2) notice of entry of judgment in the state court action;[9] (3) notice of appeal of the state court judgment to the California Court of Appeal, Second Appellate District;[10] (4) the Court of Appeal docket for plaintiff's appeal of the state court action;[11] (5) the California Supreme Court docket for plaintiff's appeal of the Court of Appeal's denial of his request for immediate stay;[12] and (6) plaintiff's opening brief in the Court of Appeal.[13] Plaintiff does not oppose these requests.

Plaintiff asks that the court take judicial notice of (1) *In re Metz*, 225 B.R. 173 (9th Cir. BAP 1998), an opinion of the Ninth Circuit Bankruptcy Appellate Panel;[14] and (2) an opinion letter from the United States Department of Labor Pension and Welfare Benefit Programs.[15] Defendant does not oppose plaintiff's requests.

■ In deciding a Rule 12(b)(6) motion, the court generally looks only to the face of the complaint and documents attached thereto. *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir.2002); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n. 19 (9th Cir.1990). A court normally must convert a Rule 12(b)(6) motion into a Rule 56 motion for summary judgment if it "considers evidence outside the pleadings. . . . A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by

reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir.2003). See *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007) (a court may consider "other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice"); *Branch v. Tunnell* 14 F.3d 449, 453 (9th Cir.1994) (noting that a court may consider a document whose contents are alleged in a complaint, so long as no party disputes its authenticity), overruled on other grounds by *Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir.2002).

■ The second document defendant asks the court to notice is attached to the first amended complaint.[16] The court may thus consider this document in deciding the pending motion. See *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir.1987) ("If a complaint is accompanied by attached documents, the court is not limited by the allegations contained in the complaint. These documents are part of the complaint and may be considered in determining whether the plaintiff can prove any set of facts in support of the claim").

■ The remainder of the documents defendant seeks to have judicially noticed

8. *Id.*, Exh. 1.

9. *Id.*, Exh. 2.

10. *Id.*, Exh. 3.

11. *Id.*, Exh. 4.

12. *Id.*, Exh. 5.

13. *Id.*, Exh. 6.

14. Plaintiff's Request for Judicial Notice ("Plaintiff's RJN"), Docket No. 79 (Nov. 14, 2013).

15. *Id.;* Request for Judicial Notice, Docket 79 (Nov. 14, 2013).

16. FAC, Exh. 2–a, Docket No. 68–6 (Aug. 2, 2013).

are pleadings or orders filed in a related state court case, the divorce action between plaintiff and Dawn McVey, and appeals of the trial court decision in that action to the Court of Appeal and California Supreme Court. Under Rule 201, the court can judicially notice "[o]fficial acts of the legislative, executive, and judicial departments of the United States," and "[f]acts and propositions that are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy." Because court filings are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned," pleadings filed and orders issued in related litigation are proper subjects of judicial notice under Rule 201. See *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n. 6 (9th Cir.2006) ("We may take judicial notice of court filings and other matters of public record"). See also *In re Zulueta*, 520 Fed.Appx. 558, 559 (9th Cir. 2013) (Unpub.Disp.) (taking judicial notice of the docket in an underlying bankruptcy proceedings); *Rodriguez v. Disner*, 688 F.3d 645, 660 n. 11 (9th Cir.2012) (taking judicial notice of briefs filed in related case); *Roberson v. City of Los Angeles*, 220 Fed.Appx. 522, 523 (9th Cir.2007) (Unpub.Disp.) (taking judicial notice of the state court docket sheet in the underlying action); *Asdar Group v. Pillsbury, Madison & Sutro*, 99 F.3d 289, 290 n. 1 (9th Cir.1996) (court may take judicial notice of the pleadings and court orders in earlier related proceedings); *Madden v. Cate*, No. CV 11–5652 FMO(JC), 2013 WL 5741781, *3 n. 5 (C.D.Cal. Oct. 22, 2013) (taking judicial notice of the California Supreme Court docket); *Rosal v. First Fed. Bank of California*, 671 F.Supp.2d 1111, 1120–21 (N.D.Cal.2009) (taking judicial notice of plaintiff's bankruptcy petition, an order granting a motion for relief from the automatic stay, and the bankruptcy court's order of dismissal); *Retired Employees Ass'n of Orange County, Inc. v. County of Orange*, 632 F.Supp.2d 983, 985 (C.D.Cal. 2009) (taking judicial notice of a bankruptcy court order under Rule 201); Accordingly, the court takes judicial notice of these documents.

■ Plaintiff asks the court to judicially notice an opinion of the Ninth Circuit Bankruptcy Appellate Panel. It is unnecessary to take judicial notice of the opinion, which plaintiff cites as precedent and which the court can consider as such. See, e.g., *Lucero v. Wong*, No. C 10–1339 SI (pr), 2011 WL 5834963 (N.D.Cal. Nov. 21, 2011) ("It is unnecessary to request that the court judicially notice published cases from California and federal courts as legal precedent; the court routinely considers such legal authorities in doing its legal analysis without a party requesting that they be judicially noticed"); *Jacquett v. Sisto*, No. CIV S–06–2938 RRB EFBP, 2008 WL 1339362 (E.D.Cal. Apr. 9, 2008) (construing a request that the court take judicial notice of a published Ninth Circuit decision as "a notice of supplemental authority"); *Chapman v. Chast Manhattan Mortg. Corp.*, No. 04–CV–0859–CVE–FHM, 2007 WL 4268774, *2 n. 7 (N.D.Okla. Nov. 30, 2007) ("Plaintiff's motion could also be construed as request to take judicial notice of legal precedent.... As a matter of course, federal courts are bound to apply precedent without formally taking judicial notice of law, and the procedure for judicial notice under Fed. R.Evid. 201 applies only to adjudicative facts"); *BP West Coast Products LLC v. May*, 347 F.Supp.2d 898, 901 (D.Nev.2004) (responding to a request for judicial notice of another court's decision by stating that the court could "take this case into account as non-binding precedent"); see also *Getty Petroleum Marketing, Inc. v. Capital Ter-*

*minal Co.*, 391 F.3d 312 (1st Cir.2004) (Lipez, J., concurring) ("Judicial notice of law is the name given to the commonsense doctrine that the rules of evidence governing admissibility and proof of documents generally do not make sense to apply to statutes or judicial opinions-which are technically documents-because they are presented to the court as law, not to the jury as evidence.... Although judicial notice of fact and judicial notice of law share the phrase 'judicial notice,' they draw on different rules of practice. Rule 201 'governs only judicial notice of adjudicative facts.' ... Judicial notice of law is outside the scope of Rule 201, and derives from practical considerations and case law that do not rely on Rule 201 or principles of evidence").

■ The second document plaintiff asks the court to judicially notice is an opinion letter issued by the Department of Labor. Courts may take judicial notice of this type of public record. See *Madrigal v. Tommy Bahama Group, Inc.*, No. CV 09–08924 SJO (Cwx), 2011 WL 10511339, *1–2 (C.D.Cal. June 27, 2011) (taking judicial notice of opinion letters from the U.S. Department of Labor because they were public records and not subject to reasonable dispute); *Mendoza v. Home Depot, U.S.A. Inc.*, No. CV 09–05843 SJO (JCx), 2010 WL 424679, *3 (C.D.Cal. Jan. 21, 2010) (same). The court thus takes judicial notice of the opinion letter. Having granted the parties' requests, the court will consider the judicially noticed documents in deciding defendant's motion.

## B. Factual Background

The McVey Construction, Inc. Defined Benefit Pension Plan and Trust (the "plan") was established in 1981 by McVey Construction as a defined benefit pension plan under 26 U.S.C. § 414(j).[17] Participants in such plans receive a monthly benefit amount that is determined by a formula based on employee earnings, tenure, and age.[18] Plaintiff and Dawn McVey ("the McVeys"), who were then married, were the sole shareholders of McVey Construction, employees of the company, and participants in the plan.[19] They also served as co-trustees of the plan.[20] In 1984, the McVeys contributed $250,000 of community assets to fund the plan.[21] McVey Construction later changed its name to Bittersweet Distributors, Inc.[22] Following their retirements in 2004 and 2009, respectively, plaintiff and Dawn McVey began to receive payments from the plan.[23] In 2010, plaintiff removed Dawn McVey as co-trustee and the couple ended their marriage on August 5, 2011.[24]

During marital dissolution proceedings in state court, the McVeys disagreed as to

17. *Id.*, ¶ 20.

18. *Id.*, ¶¶ 3, 4.

19. *Id.*, Exh. 3 at 3.

20. *Id.*, ¶¶ 6, 24.

21. *Id.*, ¶ 22.

22. *Id.*, ¶ 21. Plaintiff contends that after McVey Construction changed its name to Bittersweet Distributors, the plan's name changed to Bittersweet Distributors, Inc. Defined Benefit Pension Plan and Trust. (*Id.*,)

The plan document plaintiff attaches to his first amended complaint shows, however, only that the employer's name changed, and that the plan name remained "McVey Construction, Inc. Defined Benefit Pension Plan." (*Id.*, Exh. 1–a.) McVey Construction ceased to exist as a corporation in 1996. (*Id.*, ¶ 23.) The McVeys remained equal owners of Bittersweet Distributors. (Defendant's RJN, Exh. 6 at 7.)

23. *Id.*, ¶ 26.

24. *Id.*, ¶¶ 6, 18, 19.

how to divide the plan and its assets.[25] On June 14, 2012, the state court entered a judgment directing that the plan's surplus assets be divided by "spinning off" the assets to a new qualified plan (the "spin off transaction").[26] Specifically, the court directed Dawn McVey to cause the transfer of one-half of the plan's assets to the trustee of a new qualified plan to be sponsored by a new business she was going to establish.[27] On August 16, 2012, one week after he commenced this action, plaintiff appealed that judgment to the California Court of Appeal in his personal capacity.[28]

Dawn McVey passed away on April 19, 2013.[29] Colin McVey, now the defendant in this action, is the child of plaintiff and Dawn McVey; he is Dawn McVey's executor and personal representative, and the trustee of the Dawn McVey Living Trust.[30] On August 2, 2013, plaintiff filed an amended complaint naming Colin McVey in his capacity as executor, trustee, and personal representative.

Plaintiff contends the state court was empowered only to divide the McVeys' accrued benefits as participants, and lacked jurisdiction to divide the plan assets.[31] He asserts the spin off transaction violates federal law,[32] because the plan participants have rights only to the benefits they were promised under the plan, not to any portion of the plan's surplus assets.[33] He also argues that the spin off transaction creates a substantial risk that the IRS will disqualify the plan, resulting in fines, penalties, and adverse tax consequences.[34]

Plaintiff seeks a declaration as to whether the spin off transaction violates ERISA, and if so, whether he is required to comply with the state court's order. He also seeks an injunction restraining defendant from spinning off the surplus plan assets, and requiring him to obtain a private letter ruling from the Internal Revenue Service that addresses whether the spin off transaction will result in disqualification or dissolution of the plan prior to the spin off.[35]

## II. DISCUSSION

### A. Whether the Plan is ERISA Qualified

#### 1. *Yates, Kennedy,* and *Metz*

■ The parties dispute whether the plan is qualified under ERISA. To be ERISA qualified, a plan must provide retirement income or deferred compensation to "employees." 29 U.S.C. § 1002(2)(A)(i);

---

25. *Id.,* ¶ 27.

26. *Id.,* ¶¶ 27, 31; *id.,* Exhs. 2–a, 3 (Final Statement of Decision); Defendant's RJN, Exh. 2.

27. FAC, ¶ 33.

28. Defendant's RJN, Exhs. 3–4. The court docket indicates that plaintiff sought a stay from the Court of Appeal on July 1, 2013. (*Id.*) Defendant asserts plaintiff requested a stay pending resolution of the claims in this action, and that the Court of Appeal has deferred ruling on the stay request pending the completion of briefing on the appeal. (MTD at 5.)

29. FAC, ¶ 7.

30. *Id.,* ¶ 8.

31. *Id.,* ¶ 41.

32. Plaintiff asserts the spin off transactions violates ERISA; the "economic substance doctrine"; the "substance over form doctrine"; and the "sham transaction doctrine." He maintains that it will expose him to breach of fiduciary duty claims. (*Id.,* ¶¶ 39, 47.)

33. *Id.,* ¶ 34.

34. *Id.*

35. *Id.,* ¶¶ 1–3 (Prayer for Relief).

29 C.F.R. § 2510.3–3(b).[36] The United States Department of Labor has issued a regulation clarifying that a corporation's sole owner and the sole owner's spouse are not considered "employees." *In re Metz,* 225 B.R. 173, 176 (9th Cir.BAP 1998); 29 C.F.R. § 2510.3–3(c).[37] At the time the state court issued a judgment in the dissolution action, plaintiff and Dawn McVey owned the corporation that was the sponsor of the plan and were the plan's only participants.[38] Prior to the dissolution of their marriage, therefore, the plan was not ERISA qualified because none of its participants was an employee. See 29 C.F.R. § 2510.3–3(c).

The parties, however, dispute whether the plan became ERISA qualified once the McVeys' marriage was dissolved. At that point, the plan had two participants, each of whom was an owner of the corporation; the owners, however, were no longer married. The Ninth Circuit has held that a plan whose only participants are owners is not ERISA qualified. *Kennedy v. Allied Mut. Ins. Co.,* 952 F.2d 262, 264 (9th Cir. 1991). In *Kennedy,* two brothers were the sole owners of an outdoor advertising company. *Id.* at 263. One of the brothers testified at a deposition that he and his brother were the only vested participants in the plan, but subsequently proffered a declaration stating that another employee was also a vested participant. *Id.* at 264. The district court disregarded the declaration in deciding a motion for summary judgment, and held that the plan was not ERISA qualified because there was no evidence that any non-owner employee was a participant. *Id.* at 265. The Ninth Circuit agreed that, if the brothers were the only participants, "the Plan would not qualify under·ERISA." It clarified the rule as to when district courts can consider affidavits that contradict earlier deposition testimony, and remanded the case to the district court so that it could determine whether it should have considered the declaration. *Id.* at 266–67.

Plaintiff argues that *Kennedy* is not controlling because it was decided before *Yates v. Hendon,* 541 U.S. 1, 124 S.Ct. 1330, 158 L.Ed.2d 40 (2004), and *In re Metz,* 225 B.R. 173. In *Metz,* a debtor and her husband, Metz, were the sole owners of Metz Construction, Inc., which had a retirement plan covering only Metz. *Id.* at 175–76. During their marriage, therefore, neither Metz nor his wife was an "employee" under the plan, and the plan was not ERISA qualified. *Id.* at 176. The couple

**36.** 29 U.S.C. § 1002(2)(A) provides:
"Except as provided in subparagraph (B), the terms 'employee pension benefit plan' and 'pension plan' mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program—
(i) provides retirement income to employees[.]"
29 C.F.R. § 2510.3–3 provides:
"Plans without employees. For purposes of title I of the Act and this chapter, the term 'employee benefit plan' shall not include any plan, fund or program, other than an apprenticeship or other training program, under which no employees are participants covered under the plan, as defined in paragraph (d) of this section. . . ."

**37.** 29 C.F.R. § 2510.3–3(c) provides:
"(c) Employees. For purposes of this section:
(1) An individual and his or her spouse shall not be deemed to be employees with respect to a trade or business, whether incorporated or unincorporated, which is wholly owned by the individual or by the individual and his or her spouse, and
(2) A partner in a partnership and his or her spouse shall not be deemed to be employees with respect to the partnership."

**38.** Opposition at 2.

later divorced, and the state court awarded the debtor a one-half interest in the plan and 50 percent of the shares of Metz Construction. *Id.* at 174–75. The Ninth Circuit Bankruptcy Appellate Panel held that at that point, Metz was no longer the sole owner of the corporation, and thus became an "employee." This caused the plan to become a qualified ERISA plan. *Id.* at 177.

*Metz* is difficult to reconcile with *Kennedy*. Although *Metz* is more factually similar to this case than *Kennedy*, both decisions address whether a retirement or pension plan whose only participants are part owners of the sponsoring company is ERISA qualified. The *Kennedy* court held that such a plan was not ERISA qualified because no non-owner employee was a participant. The *Metz* court reached the opposite conclusion. The *Metz* court cited *Kennedy* on an unrelated point of law, but did not discuss the decision or attempt to distinguish it in any way. Instead, the court based its holding on a Seventh Circuit case, *Matter of Baker*, 114 F.3d 636, 639 (7th Cir.1997), which held that a majority shareholder covered by a pension plan was an "employee" because he was not the corporation's sole owner.

As defendant notes, *Metz* is not binding on this court. See *Bank of Maui v. Estate Analysis, Inc.*, 904 F.2d 470, 472 (9th Cir.1990) ("[I]t must be conceded that BAP decisions cannot bind the district courts themselves. As article III courts, the district courts must always be free to decline to follow BAP decisions and to formulate their own rules within their jurisdiction"); *In re Hassen Imports Partnership*, 502 B.R. 851, 859 n. 3 (C.D.Cal. 2013) (citing *Bank of Maui*). The Ninth Circuit "treat[s] the BAP's decisions as persuasive authority given its special expertise in bankruptcy issues and to promote uniformity of bankruptcy law throughout the Ninth Circuit." *In re Silverman*, 616 F.3d 1001, 1005 n. 1 (9th Cir.2010). Here, however, the *Metz* court's holding as to whether a partial owner of a company is an "employee" under ERISA does not address an issue within its area of special expertise. Following its holding, therefore, would not serve the purposes noted by the *Silverman* court. For this reason, and because the Ninth Circuit has spoken on the issue, the court declines to follow the reasoning in *Metz*.[39] Indeed, on multiple occasions, the Ninth Circuit has cited *Kennedy* with approval, and applied the rule it states. See, e.g., *LaVenture v. Prudential Ins. Co. of America*, 237 F.3d 1042, 1045 (9th Cir.

**39.** Plaintiff argues that the statement in *Kennedy* that plans that cover only co-owners of a business are not ERISA qualified was dicta. (Opposition at 8.) "Dicta in normal judicial parlance are statements of a court not necessary to its resolution of the case before it; holdings consist in the rules disposing of the case." *Bradley v. Henry*, 428 F.3d 811, 817 (9th Cir.2005). In *Kennedy*, the district court granted summary judgment because it found there were no triable issues of fact concerning the plan's compliance with ERISA. (See 952 F.2d at 265.) The Ninth Circuit reversed and remanded, because it concluded that whether the plan was ERISA qualified required that the district court determine whether it could consider plaintiff's declaration stating that a non-owner employee had participated in the plan. (*Id.* at 267.) The Ninth Circuit's statement that a plan whose only participants are owners of the business does not qualify under ERISA was necessary to this holding. Had the court concluded that the plan was ERISA qualified because both Kennedy brothers participated, all issues related to consideration of the declaration would have been moot and remand to the district court would have been unnecessary. As a result, the court concludes that the portion of the opinion in *Kennedy* stating that a retirement or pension plan that covers only co-owners of a business is not ERISA qualified was not dicta, but binding precedent the court must follow.

2001) (citing *Kennedy* for the proposition that ERISA does not govern a plan whose only fully vested beneficiaries are a company's owners); see also *In re Lowenschuss,* 171 F.3d 673, 680 (9th Cir.1999) (same); *In re Watson,* 161 F.3d 593, 597 (9th Cir.1998) (same); *Peterson v. American Life & Health Ins. Co.,* 48 F.3d 404, 407 (9th Cir.1995) (same).

Both parties assert that the Supreme Court's 2004 decision in *Yates* supports their position.[40] In *Yates,* the Court held that a working owner of a business qualifies as a "participant" in an ERISA qualified pension plan "[i]f the plan covers one or more employees other than the business owner and his or her spouse[.]" 541 U.S. at 6, 124 S.Ct. 1330. Dr. Yates was the sole shareholder and president of a professional corporation that maintained a profit sharing plan; from its inception, at least one person other than Yates or his wife was a participant. *Id.* at 7–8, 124 S.Ct. 1330. The Court held that Yates was a participant in the plan, rejecting the premise that working owners are barred from participating in qualified plans. It noted that 29 C.F.R. § 2510.3–3(c) "addresses only what plans qualify as 'employee benefit plans' under Title I of ERISA," and does not foreclose allowing owners to be participants in qualifying plans. *Id.* at 21–22, 124 S.Ct. 1330. Thus, "[p]lans that cover only sole owners or partners and their spouses, the regulation instructs, fall outside Title I's domain. Plans covering working owners and their nonowner employees, on the other hand, fall entirely within ERISA's compass." *Id.* at 21, 124 S.Ct. 1330. The Court noted that its conclusion was corroborated by Title IV of ERISA, which "does not apply to plans established and maintained *exclusively* for substantial owners ... [but] does cover plans in which substantial owners participate *along with* other employees." *Id.* at 15, 124 S.Ct. 1330 (internal citation and quotation omitted; emphasis original).

The court believes *Yates* supports defendant's position, not plaintiff's. Here, it is uncontroverted on the face of the pleadings that the plan included only owners, not non-owner employees. *Yates* does not hold that plans whose only participants are owners necessarily qualify under ERISA; it holds only that a plan qualifies if it covers "one or more employees other than the business owner and his or her spouse." *Id.* at 6, 124 S.Ct. 1330. Consequently, it does not undermine *Kennedy.*[41]

**40.** See Opposition at 9; MTD at 8–9; Reply in Support of Motion to Dismiss ("Reply"), Docket No. 80 (Nov. 18, 2013) at 2–3.

**41.** At the hearing and in his supplemental brief, plaintiff argued that the plan is subject to ERISA because Colin McVey and his brother are "putative beneficiaries." (Plaintiff's Supp. at 5.) Citing *Yates,* he asserts that as long as there is another participant, a working owner is considered an employee under ERISA. (Plaintiff Supp. at 5.) Plaintiff's argument is unavailing. Under 29 U.S.C. § 1002(7), a "'participant' means any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit." Beneficiaries, by contrast, are "person[s] designated by a participant, or by the terms of an employee benefit plan, who [are] or may become entitled to a benefit thereunder." *Id.,* § 1002(8). The first amended complaint does not allege that Colin McVey or his brother ever worked for McVey Construction or Bittersweet Distributors; accordingly, they are not participants. Nor does *Yates* support plaintiff's argument, as that case held that a working owner is a "participant" so long as "the plan covers one or more *employees* other than the business owner and his or her spouse[.]" 541 U.S. at 6, 124 S.Ct. 1330. Because the first amended complaint does not allege that Colin McVey and his brother were

Because Ninth Circuit authority indicates that a plan whose only participants are owners of the sponsoring business is not an ERISA qualified plan, the court concludes that the McVey Construction plan did not qualify under ERISA following the dissolution of the McVeys' marriage because no non-owner employees were participants. See *McLain v. Unum Life Ins. Co. of America*, No. 2:13–cv–0688–WMA, 2013 WL 3242842, *3 (N.D.Ala. June 21, 2013) (citing *Yates* and holding that a plan in which the only participants were two co-owners of a business was not an ERISA plan); *McGowan v. U.S. Life Ins. Co. in City of New York*, No. 06 Civ. 7680 LTSHBP, 2007 WL 196471, *1 (S.D.N.Y. Jan. 24, 2007) (same); *Teich v. United World Life Ins. Co.*, No. 2:06–CV–0357–RCJ–PAL, 2007 WL 1434904, *4–5 (D.Nev. May 14, 2007) (citing *Yates* and *Kennedy* and holding that a plan in which the only participants were two employee-owners was not an ERISA plan); but see *Provident Life & Acc. Ins. Co. v. Sharpless*, 364 F.3d 634, 639 (5th Cir.2004) (holding that shareholders in a multiple-shareholder corporation are em-

ployees under ERISA); *Leckey v. Stefano*, 263 F.3d 267, 272 (3d Cir.2001) (same).[42]

## 2. Whether at the Moment of the State Court's Order of Dissolution the Plan Covered Any Employee of McVey Construction

▮ As noted, plaintiff argues that once his marriage to Dawn McVey was dissolved, the plan covered two co-owners of the business who were not husband and wife, and became, at that moment, an ERISA qualified plan. While the court has determined that under binding Ninth Circuit precedent, a plan that covers only co-owners of a business is not ERISA qualified, and that that precedent has not been affected by *Yates*, the court considers whether, assuming *Kennedy* were no longer binding, the plan would have become an ERISA qualified plan at the moment of dissolution. At the time the marriage ended in 2011, neither plaintiff nor Dawn McVey was an employee of Bittersweet Distributors, as they had retired in 2004 and 2009 respectively. A district court in Utah faced a similar situation in *Dahl v.*

ever employees, the fact that they may receive benefits under the plan does not make it ERISA qualified.

**42.** In his supplemental brief, plaintiff argued that *Kennedy* does not control because the *Kennedy* court disregarded the DOL's regulations and advisory opinion. He cites the DOL's rejection of comments received in response to the regulation that became 29 C.F.R. § 2510.3–3, which urged that shareholders of closely held corporations be excluded from the definition of "employee." (40 Fed.Reg. 34528.) Plaintiff also cites DOL Advisory Opinion 76–67, in which the DOL stated that a retirement plan need not comply with ERISA's reporting requirements "only where the stock of the corporation is wholly owned by one shareholder and his or her spouse and the shareholder or the shareholder and his or her spouse are the only participants in the plan." 1976 WL 5082 (E.R.I.S.A) (May 21, 1976). This suggests,

although it does not explicitly state, that where co-shareholders who are not spouses are participants in a plan, it can qualify as an ERISA plan. Although the DOL's interpretation of its own regulations can be entitled to deference, *Villegas v. The Pep Boys Manny Moe & Jack of Cal.*, 551 F.Supp.2d 982, 990 (C.D.Cal.2008) (describing *Auer v. Robbins*, 519 U.S. 452, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997) and *Christensen v. Harris County*, 529 U.S. 576, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000) deference to an agency's interpretation of its own regulations and statutes, and noting that deference is warranted only when the language of the regulation is ambiguous), the court is nonetheless bound to follow Ninth Circuit precedent. Thus, *Kennedy* controls. See *Garfias–Rodriguez v. Holder*, 702 F.3d 504, 518 n. 11 (9th Cir.2012) ("[A]lthough the BIA may have announced the rule, it 'does not become binding in this circuit until we defer to that interpretation,' " quoting Gould, J., concurring).

*Dahl,* No. 2:11–CV–949–TC, 2013 WL 603785 (D.Utah Feb. 19, 2013). There, a physician who was the sole owner of a medical practice set up a defined benefit pension trust. *Id.* at *1. His wife worked for the practice for two years during the marriage, but proffered no evidence that she worked for the business at the time the marriage was dissolved. *Id.* The wife brought a claim under ERISA, challenging the amount of a distribution she had received as a breach of fiduciary duty. The court concluded that the plan was not an ERISA qualified plan. It stated:

> "[T]he Trust does not fall within the definition of an ERISA plan. The controlling regulations expressly provide that the term 'employee benefit plan'
>
>> shall not include any plan, fund or program, other than an apprenticeship or other training program, under which *no* employees are participants covered under the plan[.]
>
> 29 C.F.R. § 2510.3–3(b) (emphasis added).
>
> "Ms. Dahl contends that she was an employee of the Medical Practice. Although Ms. Dahl received compensation and W–2 forms from the Medical Practice for a couple of years, she was not, as a matter of law, an 'employee' entitled to protection by ERISA [at that time]. The regulations established a clear rule:
>
>> An *individual* and *his or her spouse* shall *not* be deemed to be employees with respect to a trade or business, whether incorporated or unincorporated, which is *wholly owned by the individual* or by the individual and his or her spouse[.]
>
> 29 C.F.R. § 2510.3–3(c) (emphasis added). There is no dispute that Dr. Dahl and Ms. Dahl were the only two employees of the Medical Practice and were married at the time. There is also no dispute that the Medical Practice was,

and continues to be, wholly owned by Dr. Dahl. Although by other definitions they may have been employees, they were not 'ERISA employees.' In essence, they are not counted. Accordingly, under ERISA regulations, the Medical Practice had no employees, and so the Trust is not an employee benefit plan. The regulation expressly excludes them—and the Trust—from ERISA coverage.

> "In the alternative, Ms. Dahl contends that she was an employee at the time she and Dr. Dahl were divorced and so the regulation does not apply. But there is no competent, admissible evidence in the record that she was employed by the Medical Practice for any years other than 2002 and 2003. Her self-serving 'resignation' and earlier statements by Dr. Dahl about her status as an employee do not establish that she was, as a matter of fact or law, an employee, much less an employee for purposes of ERISA, at the time the Dahls were divorced in 2010." *Id.* at *4.

The Tenth Circuit affirmed. *Dahl v. Charles F. Dahl, M.D., P.C. Defined Benefit Pension Trust,* 744 F.3d 623 (10th Cir. 2014). It stated:

> "Ms. Dahl acknowledges that the pension trust created by Dr. Dahl's practice could not qualify for ERISA protection during her marriage because she and Dr. Dahl were the only plan participants. She argues in her opening brief, however, that the trust became ERISA qualified upon her divorce because she was transformed from a spousal participant into an employee participant. Ms. Dahl's argument assumes that she was an employee of Dr. Dahl's practice following her divorce in 2010. But although tax records show that she was compensated as an employee of the practice in 2002 and 2003, she has not

presented comparable records for any later year. And her occupation being listed as 'manager' on tax returns for 2003 through 2006 hardly established her employment status at the time of her divorce in 2010." *Id.* at 629.

The holding in *Dahl* indicates the following: during the period of their employment by McVey Construction, neither plaintiff nor Dawn McVey was an employee of the corporation for ERISA purposes since they were the co-owners of the corporation and were spouses. 29 C.F.R. § 2510–3.3(c). At the time of their divorce, neither was an employee of the company, as both had previously retired. Hence, the plan could not become ERISA qualified on the date of dissolution because it did not cover any employees at that point. See 29 C.F.R. § 2510.3–3(b) (stating that an "employee benefit plan" does not include any plan in which no "employees" are "participants covered under the plan"). Stated differently, having not been employees for ERISA purposes while working for the company, plaintiff and Dawn McVey were not transformed into employees once their marriage was dissolved because, by that time, neither was employed by the company.

*Metz* is not to the contrary. There, following the dissolution of a debtor's marriage to the owner of a construction company, she sought to exclude the one-half interest in the company's pension plan she had received in the divorce proceeding from her bankruptcy estate. 225 B.R. at 174–75. A creditor argued that the plan was not ERISA qualified because it covered only the debtor's former husband who was the sole owner of the business. *Id.* at 176. The court reasoned that the plan became ERISA qualified upon dissolution of the marriage "because the [d]ebtor's former spouse ... thereafter became an employee within the Department of Labor definition." *Id.* at 177. This was because he remained an employee of the company, but was no longer the sole owner of the corporation. *Id.* ("Metz Construction, Inc. is a corporation. Robert S. Metz was not the sole owner after the July 1, 1986, dissolution from the Debtor. The record instead indicates that the Debtor and her former spouse became co-owners when the State court awarded half of the shares of stock in Metz Construction, Inc. to the Debtor.... Since Robert S. Metz is not the sole owner, he is an employee.... Since he is an employee, the Plan has one employee participant. Accordingly, the Plan is ERISA qualified"). Here, by contrast, at the point in time when plaintiff and Dawn McVey were no longer husband and wife, neither was an employee of the corporation, as both had retired. Since they were the only individuals covered by the pension plan, and no employees of McVey Construction were covered, the plan was not an "employee benefit plan" under § 2510–3.3(b).[43]

---

**43.** The fact that both plaintiff and Dawn McVey were *former* employees of McVey Construction, and thus participants under the plan, does not change this result. 29 U.S.C. § 1002(6) states: "The term 'employee' means any individual employed by an employer." Subsection (7) of that statute defines "participant" as "any employee *or former employee* of an employer ... who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer ... or whose beneficiaries may be eligible to receive any such benefit." 29 U.S.C. § 1002(7) (emphasis added). The DOL regulations that govern determinations as to whether a plan is ERISA qualified provide that "the term 'employee benefit plan' shall not include any plan, fund or program, other than an apprenticeship or other training program, under which no employees are participants covered under the plan...." 29 C.F.R. 2510.3–3(b). Subsection (c)(1) of the same regulation states that, "[for] purposes of this" regulation, "[a]n individual and his or her spouse shall not be

## B. Whether the Court Lacks Subject Matter Jurisdiction

 Plaintiff asserts that the court has federal question jurisdiction to hear this case under 28 U.S.C. § 1331, because it raises issues that arise under ERISA, 29 U.S.C. § 1132(a)(3); under the Declaratory Judgment Act, 28 U.S.C. § 2201(a); and under Rule 65 of the Federal Rules of Civil Procedure.[44] As respects plaintiff's first asserted basis for jurisdiction, the court has already determined that the plan is not ERISA qualified. Defendant cites *Delaye v. Agripac, Inc.,* 39 F.3d 235 (9th Cir.1994), for the proposition that where a court determines that a plan is not ERISA qualified, the ERISA statute cannot provide a basis for jurisdiction under 28 U.S.C. § 1331. See *id.* at 238 ("Because Delaye's employment contract is not a 'plan' governed by ERISA, his claim that his contract was breached does not present

---

deemed to be employees with respect to a trade or business, whether incorporated or unincorporated, which is wholly owned by the individual or by the individual and his or her spouse...." 29 C.F.R. 2510.3–3(c)(1). Section 2510.3–3(d) separately addresses participants. It is clear from the structure both of the statute and the regulations that there is a distinction between employee and participant. While the latter includes former employees, the former does not. In the context of § 2510.3–3(b), which defines what constitutes an employee benefit plan, therefore, "employee" must be read to mean "current employee." Because at the time of the dissolution of the McVeys' marriage, neither was a current employee of the company, and no current employee was a member, the plan did not become an employee benefit plan governed by ERISA. See *Yates,* 541 U.S. at 21, 124 S.Ct. 1330 (concluding that a working owner could qualify as a "participant" in a pension plan sponsored by his corporation so long as the plan covered one or employees other than him and his wife, and stating: "Plans that cover only sole owners or partners and their spouses, the regulation instructs, fall outside Title I's domain. Plans covering working owners and their nonowner employees, on the other hand, fall entirely within ERISA's compass").

44. FAC, ¶¶ 9, 10, 14, 15. Plaintiff's attempt to rest jurisdiction on the Declaratory Judgment Act and Rule 65 is unavailing, as neither provides an independent source of federal jurisdiction. The Declaratory Judgment Act creates only a remedy and does not provide an independent basis for jurisdiction. See *Franchise Tax Bd. of State of Cal. v. Construction Laborers Vacation Trust for Southern Cal.,* 463 U.S. 1, 20 n. 19, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983) ("[A] declaratory judgment plaintiff could not get original federal jurisdiction if the anticipated lawsuit by the declaratory judgment defendant would not 'arise under' federal law," citing *Public Service Comm'n of Utah v. Wycoff Co.,* 344 U.S. 237, 248, 73 S.Ct. 236, 97 L.Ed. 291 (1952)); *Levin Metals Corp. v. Parr–Richmond Terminal Co.,* 799 F.2d 1312, 1315 (9th Cir.1986) ("The Declaratory Judgment Act is not an independent source of federal subject matter jurisdiction," citing *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 671, 70 S.Ct. 876, 94 L.Ed. 1194 (1950)); William W. Schwarzer, A. Wallace Tashima, James M. Wagstaffe, 2B–5 RUTTER GROUP PRACTICE GUIDE: FEDERAL CIVIL PROCEDURE BEFORE TRIAL (Calif. & 9th Cir. eds.) § 2:775 ("[T]he Declaratory Judgment Act (28 USC §§ 2201–2202) merely creates a remedy in cases otherwise within federal jurisdiction. It is not an independent basis of federal question jurisdiction"). Rule 65 concerns applications for injunctive relief. FED.R.CIV.PROC. 65. "It is axiomatic that the Federal Rules of Civil Procedure can neither 'expand the jurisdiction of the district courts' nor 'create jurisdiction where none exists.' " *LaBare v. U.S. Dept. of Justice,* No. C 04–4974 MHP, 2005 WL 588566, *3 (N.D.Cal. Mar. 10, 2005) (quoting *United States v. Suntip Co.,* 82 F.3d 1468, 1474 (9th Cir.1996)); see also *Kurth v. Holston,* No. 2:11–CV–1638 JCM (PAL), 2012 WL 1900948, *3 (D.Nev. May 24, 2012) ("Finally, plaintiff asserts Federal Rule of Civil Procedure 65 as a jurisdictional basis.... Rule 65 is not an independent basis of jurisdiction" (internal citation omitted)); see generally FED. R.CIV.PROC. 82 ("These rules do not extend or limit the jurisdiction of the district courts or the venue of actions in those courts"). Accordingly, neither the Declaratory Judgment Act nor Rule 65 provides an independent basis for the exercise of jurisdiction in this case.

a federal question. The district court lacked jurisdiction to resolve this dispute"). The vitality of this holding is doubtful, however, following the Supreme Court's decision in *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006), and the Ninth Circuit's decision in *Leeson v. Transamerica Disability Income Plan*, 671 F.3d 969 (9th Cir.2012). In *Arbaugh*, the Court explained that "[s]ubject matter jurisdiction in federal-question cases is sometimes erroneously conflated with a plaintiff's need and ability to prove the defendant bound by the federal law asserted as the predicate for relief—a merits-related determination." 546 U.S. at 511, 126 S.Ct. 1235. The case concerned a plaintiff's lawsuit against her former employer under Title VII for sexual harassment. *Id.* at 503–04, 126 S.Ct. 1235. After the plaintiff prevailed at trial, the defendant moved to dismiss the action for lack of jurisdiction, asserting for the first time that because it had fewer than fifteen employees, it was not an "employer" under Title VII. *Id.* at 504, 126 S.Ct. 1235. The Supreme Court held that "the numerical threshold [incorporated into the definition of employer] does not circumscribe federal-court subject-matter jurisdiction." Rather, it stated, it "relates to the substantive adequacy of Arbaugh's Title VII claim, and therefore could not be raised defensively late in the lawsuit." *Id.*

The Court observed that characterizing a factual requirement under a federal statute as jurisdictional rather than merits-based has three significant consequences: (1) the matter can be raised at any stage of the litigation, since subject matter jurisdiction "can never be forfeited or waived," and federal courts have a continuing "independent obligation to determine whether subject-matter jurisdiction exists"; (2) while a trial judge may resolve factual disputes related to subject matter jurisdiction, a jury must resolve contested facts concerning elements of a claim; and (3) "when a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety[,]" including pendent state law claims. *Id.* at 514, 126 S.Ct. 1235.

The Court set forth a bright line rule for determining when courts should treat a defect in a plaintiff's claim as jurisdictional: "If the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with the issue. . . . But when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character." *Id.* at 515–16, 126 S.Ct. 1235.

■■■ Applying this rule, the Ninth Circuit held in *Leeson*, 671 F.3d at 979, that determining that an ERISA plaintiff is not a plan participant—which the Ninth Circuit had previously held denied a plaintiff statutory standing, see, e.g., *Freeman v. Jacques Orthopaedic & Joint Implant Surgery Med. Grp., Inc.*, 721 F.2d 654, 655–56 (9th Cir.1983) (holding that the district court lacked subject matter jurisdiction because the plaintiff was not a participant in the plan as defined in § 1002(7))— "goes to the merits of his claim and not to the subject matter jurisdiction of the district court." Other courts have reached the same conclusion with regard to whether the plan at issue is ERISA qualified. See, e.g., *Daft v. Advest, Inc.*, 658 F.3d 583, 590–91 (6th Cir.2011) ("[I]n light of *Arbaugh* and its progeny, the existence of an ERISA plan must be considered an element of a plaintiff's claim under Section 502(a)(1)(B), not a prerequisite for federal jurisdiction"); *Lewey v. Bitterroot Timberframes, L.L.C.*, No. CV 05–87–M–DWM, 2006 WL 2598945, *3 (D.Mont. Aug. 10, 2006) ("Considering the rationale expressed in *Arbaugh* relative to resolution

of the subject-matter jurisdiction/ingredient-of-claim-for-relief dichotomy, there appears to be little doubt that the existence or non-existence of an ERISA plan is properly considered as an element of a plaintiff's claim for relief, not a jurisdictional issue"). See also *Dahl*, 744 F.3d at 629 ("We are persuaded by the reasoning of the Sixth Circuit that recent Supreme Court decisions compel the conclusion that the existence of a benefit plan subject to ERISA is not a jurisdictional requirement but an element of a claim under ERISA," citing *Daft*). Accordingly, the fact that the plan at issue is not ERISA qualifies means that plaintiff's claims fail on the merits,. but does not deprive the court of subject matter jurisdiction.[45]

## C. Whether Prior Participation by Employees Would Qualify the Plan Under ERISA

 A court may dismiss a complaint without leave to amend where it finds that amendment would be futile. *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051 (9th Cir.2008) ("Dismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment"). Whether amendment would be futile in this case depends on whether plaintiff could allege facts that would show that the plan was ERISA qualified. At the hearing, the court noted that the amended complaint did not allege whether the plan had included participants other than the McVeys at some prior time, and directed the parties to brief whether prior participation by employees of McVey Construction or Bittersweet Distributors would render the plan ERISA qualified.

The Ninth Circuit addressed this question in *In re Lowenschuss*, 171 F.3d 673. In *Lowenschuss*, the court considered whether a pension plan in which the debtor had an interest qualified as an ERISA plan, and was thus excluded from the debt-

---

**45.** In its tentative order, the court indicated that it would dismiss the case under the *Rooker–Feldman* doctrine. The *Rooker–Feldman* doctrine takes its name from two Supreme Court decisions, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416, 44 S.Ct. 149, 68 L.Ed. 362 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). Under this doctrine, a district court does not have subject matter jurisdiction to hear a direct appeal from a final judgment of a state court. See *Noel v. Hall*, 341 F.3d 1148, 1155 (9th Cir. 2003). The doctrine also forbids "de facto" appeals of state court decisions. *Id.* at 1158.

Plaintiff argues in his supplemental brief that the doctrine does not apply because the underlying state court action and this action involve different parties. (Plaintiff's Supp. at 4–5.) The Supreme Court has "held *Rooker–Feldman* inapplicable where the party against whom the doctrine is invoked was not a party to the underlying state-court proceeding." *Lance v. Dennis*, 546 U.S. 459, 464, 126 S.Ct. 1198, 163 L.Ed.2d 1059 (2006) (quoting *Johnson v. De Grandy*, 512 U.S. 997, 1006, 114 S.Ct. 2647, 129 L.Ed.2d 775 (1994)). The *Lance* Court declined to address "whether there are any circumstances, however limited, in which *Rooker–Feldman* may be applied against a party not named in an earlier state proceeding—e.g., where an estate takes a de facto appeal in a district court of an earlier state decision involving the decedent." *Id.* at 466 n. 2, 126 S.Ct. 1198. Here, the respondent in the state court action was Michael McVey in his individual capacity, while the plaintiff in this action is Michael McVey as Trustee of the Bittersweet Distributors, Inc. Defined Benefit Pension Plan and Trust. The court need not determine whether the action falls within the limited exception recognized in *Lance*, however, as it has determined that the plan is not ERISA qualified. Because the court does not rest its decision on the *Rooker–Feldman* doctrine, it also need not address whether the doctrine applies because the state court lacked jurisdiction to divide the plan assets. See *Carmona v. Carmona*, 603 F.3d 1041, 1051 (9th Cir.2010) ("Where Congress explicitly grants exclusive jurisdiction to federal courts, *Rooker–Feldman* cannot bar collateral review of a state court order in federal court" (internal citation omitted)).

or's bankruptcy estate. *Id.* at 676. Lowenschuss was the sole owner of the plan's sponsor, and for at least seven years prior to filing a bankruptcy petition had been the plan's sole beneficiary. *Id.* at 680–81. The court held that the status of the plan should be determined as of the date the bankruptcy petition was filed. *Id.* at 680. It rejected Lowenschuss' argument that a plan that had at one point qualified under ERISA could not lose its ERISA qualification through employee attrition. *Id.* ("Debtor contends that once the Pension Plan was established or maintained under ERISA, the Pension Plan could not lose its ERISA status merely by the attrition of all participants in the Pension Plan except for Debtor. Instead, Debtor argues that the Pension Plan could lose its ERISA status only if it was terminated pursuant to ERISA. We disagree").

The *Lowenschuss* court reasoned that such an approach furthered the policies underlying ERISA, a statute that was " 'designed to ensure the proper administration of pension and welfare plans,' and 'to protect plan participants and beneficiaries.' " *Id.* (quoting *Boggs v. Boggs,* 520 U.S. 833, 839, 845, 117 S.Ct. 1754, 138 L.Ed.2d 45 (1997)). It noted that the statute's "protections were enacted to remedy abuses by employers who manage pension plan assets held in trust for workers in traditional employer-employee relationships," and that "self-employed owners of companies that sponsor pension plans were deliberately excluded from ERISA's protections because these individuals can protect their own beneficial interests in the plans." *Id.* (internal quotations and citations omitted). As a result, it reasoned, the policy goals of ERISA are not advanced by extending its protections to plans after they cease to include employee participants. Although the court reached this conclusion in the context of determining whether the debtor was entitled to exclude his interest in the plan from his bankruptcy estate, its reasoning would appear to apply with equal force to determinations of ERISA status outside the bankruptcy context.

Moreover, as defendant notes, the approach of the *Lowenschuss* court is consistent with the wording of the statute and its accompanying regulations.[46] 29 U.S.C. § 1002(2)(A)(i) defines "employee pension benefit plan" as a plan that *"provides* retirement income to employees[.]" 29 U.S.C. § 1002(2)(A)(i) (emphasis added). Section 2510.3–3(b) is likewise written in the present tense, and states that "the term 'employee benefit plan' shall not include any plan ... under which no employees *are* participants covered under the plan." 29 C.F.R. § 2510.3–3(b) (emphasis added). See *Meiszner v. Suburban Bank & Trust Co.,* 397 F.Supp.2d 952, 957 (N.D.Ill.2005) ("*Lowenschuss* is consistent with the wording of § 2510.3–3. The regulation states that 'the term 'employee benefit plan' shall not include any plan ... under which *no employees are participants* covered under the plan.' The regulation is written in the present tense and makes no mention of past employee participation," quoting § 29 C.F.R. § 2510.3–3(b) (internal citation omitted and emphasis original)).

District courts have cited *Lowenschuss* in holding that plans that were at one time qualified under ERISA, but subsequently became "plans without employees," were no longer subject to its requirements. See *Bates v. Provident Life and Acc. Ins. Co.,* 596 F.Supp.2d 1054, 1057 (E.D.Mich.2009) (discussing *Lowenschuss* and stating: "Bates argues that although the policy was originally issued as part [of] an employee

46. Defendant's Supp. at 2.

benefit plan governed by ERISA, as of 1995 when Bates became the sole participant and sole shareholder of D & B, it became a 'plan without employees' which is not considered to be an 'employee benefit plan' subject to ERISA. The Court agrees"); *Meiszner,* 397 F.Supp.2d at 955–57 (discussing *Lowenschuss* and holding that a plan that had qualified as an ERISA plan, but later ceased to have any employee participants, did not qualify under ERISA while its only participant was the plan's sole owner).

Citing *International Resources, Inc. v. New York Life Ins. Co.,* 950 F.2d 294 (6th Cir.1991), plaintiff argues that the fact that an ERISA plan no longer has employees does not transform it into a non-ERISA plan.[47] In *International Resources,* a company established an insurance plan that provided automatic coverage for all its employees, who numbered six at the time the plan came into existence. *Id.* at 296, 298. The Sixth Circuit determined that the plan was an ERISA plan. *Id.* at 298. The company subsequently dwindled to only two employees, one of whom was Larry Smith, president and seventy-five percent shareholder of the business. *Id.* at 296. The court concluded that even though Smith was the only full-time employee, this did not transform the ERISA plan into a non-ERISA plan, "particularly . . . where there is no indication that the plan would not have been offered to another full-time employee if such were hired in the future." *Id.* at 299. *International Resources* is distinguishable, because, unlike the plan at issue here, the Sixth's Circuit opinion indicates that the plan nev-

er ceased to include employees.[48] Moreover, the court's reasoning rested in part on the likelihood that additional full-time employees would obtain coverage, a development that appears unlikely under the McVey plan whose sole remaining participant, Michael McVey, retired nearly ten years ago.

Plaintiff also cites *Waks v. Empire Blue Cross/Blue Shield,* 263 F.3d 872 (9th Cir. 2001), for the proposition that "once ERISA, always ERISA."[49] This phrase does not appear in the court's opinion. In *Waks,* the Ninth Circuit held that an individual insurance policy is "not subject to ERISA solely because it was created through the conversion of a group policy that was subject to ERISA." *Id.* at 874. If anything, therefore, *Waks* appears to stand for the contrary proposition.

The court concludes that *Lowenschuss* and the plain language of 29 U.S.C. § 1002(2)(A)(i) and 29 C.F.R. § 2510.3-3(b) require that whether the plan at issue is ERISA qualified be determined as of the time the state court issued its order of dissolution. As a consequence, the court concludes that plaintiff will be unable to plead facts that show the plan is ERISA qualified. Even were he to allege that the plan covered employees at some point prior to the state court action, this would not qualify the plan under ERISA at the time the state court rendered its decision. Because plaintiff will be unable to establish that the plan is ERISA qualified, amendment would be futile and the action must be dismissed without leave to amend.

---

47. Plaintiff's Supp. at 3.

48. The Sixth Circuit has held that a shareholder can be an "employee" for purposes of determining whether a plan is ERISA qualified if he, or he and his spouse, are not the sole owners of the business. *Santino v. Provi-*

*dent Life and Acc. Ins. Co.,* 276 F.3d 772, 775 (6th Cir.2001). Smith's status as a joint shareholder therefore did not preclude a finding that he was an employee.

49. Plaintiff's Supp. at 3 n. 3.

## III. CONCLUSION

Because the plan is not ERISA qualified, and because plaintiff will be unable to allege facts demonstrating that it was at the time the state court issued an order in the marital dissolution action, defendant's motion to dismiss is granted with prejudice.